## ELI M. WHITNEY & others *vs.* CITY OF BOSTON.

A new trial will not be granted on account of the refusal to admit testimony, as to the value of real estate in Boston which was in controversy, from a shoemaker whose only knowledge of the subject was that for five years he had hired one of several buildings on the land, occupying the upper stories himself and underletting the lower story, and that he had lived in this country seventeen years, during which time he had hired and occupied five different houses in different parts of the city.

On trial of a petition for damages by the owners of land taken to extend a street in a city, witnesses for the petitioners testified that the land taken was well adapted to the erection of two large shops, and that there was and for several years had been a demand for such shops, say of twenty-five feet front and one hundred feet depth, in that neighborhood. On cross-examination they stated that such shops had been erected in that neighborhood, and specified one as of that description. *Held*, that evidence might be introduced in reply to show that the dimensions of the shop specified were very different from those named.

If part of a lot of land fronting on a main street in a city has been taken for extending to this street an existing cross street, the benefit to the remainder by reason of its being made a corner lot, and of more convenient access to its rear, may be deducted, in estimating damages for the part taken; although the estates fronting on the cross street, as it was before the extension, are benefited in other ways, such as increased business thereon or in the neighborhood, or increased facilities for converting dwelling-houses into places of business.

PETITION for an assessment of damages for land taken in extending La Grange Place, in Boston, to Tremont Street.

At the trial in the superior court, before *Morton*, J., the following facts appeared : La Grange Place ran from Washington Street towards Tremont Street, and at right angles therewith, and had dwelling-houses on each side, for its whole length. To extend it through to Tremont Street, the respondents took a portion of the petitioners' estate, fronting on Tremont Street, the whole estate measuring fifty-eight feet on Tremont Street, by one hundred and sixteen feet deep. The area taken was two thousand and thirty-nine square feet, with a three story brick building thereon, the lower story of which was used as a shop, with a tenement room in the rear part, and the other stories were occupied as a dwelling-house. There were also two wooden buildings in the rear, access to which was gained by a passage from Tremont Street.

The value of these buildings and of the land was in controversy.

Among other witnesses, the petitioners called August Krebs, who testified that he had hired the brick building for five years, occupying with his family the upper stories as a dwelling-house, and underletting the lower story ; that he was living there at the time when the city entered upon the land, and was familiar with the land and the condition of the brick building; that he was a shoemaker by trade, and had lived in this country seventeen years; that during that time he had hired and occupied five different houses in different parts of the city ; and that this was all the experience and dealing he had had in real estate. The petitioners then proposed to ask the witness what was a fair rent for the brick building at the time of the taking, what rent it was worth or would bring in the market, and what was the value of the building, and the value of the land taken. But the judge excluded the evidence, on the ground that the witness was not shown to have had sufficient dealing and experience in real estate to entitle him to testify as to his opinion or judgment.

The petitioners contended that all the land, before the acts

of the city, had an excellent front upon Tremont Street, which was the important street, and such a depth that it was well adapted to the erection of a large building with two large shops underneath, and for extensive business purposes above, and that such buildings and shops were in increasing demand, and that the estates were valuable in the market in view of such demand and capacity for improvement; and introduced witnesses who testified that there was, and for several years had been, a demand for large shops, say of twenty-five feet front by one hundred feet depth, in the neighborhood of the petitioners' estate. The respondents' counsel upon cross-examination inquired of these witnesses whether any shop or shops of such or nearly such dimensions had been erected in said neighborhood; and the witnesses answered that there had been, and named a grocery on the corner of Tremont and Eliot Streets as one of this description. The respondents in defence called a witness who had measured that shop, and he was allowed to testify, against the petitioners' objection, that the dimensions thereof were fifty-six feet on Tremont Street by thirty-eight feet on Eliot Street.

The respondents contended that the cutting of La Grange Place through to Tremont Street was a benefit to the remaining and of the petitioners, and that this benefit should be set off. In this view they offered in evidence the opinions of experts, that the remaining land of the petitioners was worth as much per square foot after the street was cut through as the whole estates were before. The petitioners contended that there were no benefits to be set off; that, if any benefits accrued to the land remaining, they were shared in common with the public and the other owners on La Grange Place, and Tremont Street, and in the vicinity. The judge instructed the jury that they were to set off such benefits as were conferred upon the said remaining land, but only those which were direct and peculiar, and not those which they received in common with the other estates on La Grange Place, and Tremont Street, and in the vicinity. The respondents, at the close of the charge, asked the judge to give the following instruction, which was accordingly given: " If the petitioners' estate has been benefited by reason of being made

a corner lot, or by having a more convenient access to the rear part thereof, these are benefits peculiar to this estate, within the meaning of the law, and it is the duty of the jury to allow in set-off the value of them ; and the fact, if it be a fact, that the estates fronting on La Grange Place are benefited in other or different ways, such as increased business on the street or in the neighborhood, or in increased facilities for converting dwellings into places of business, would not affect the respondents' claim to have the peculiar benefits set off."

The jury assessed the damages at eight thousand dollars; and the petitioners alleged exceptions.

*N. Morse,* ( *U. H. Crocker* with him,) for the petitioners, cited, as to the admissibility of the testimony of Krebs, *Walker* v. *Boston,* 8 Cush. 279 ; *Shaw* v. *Charlestown,* 2 Gray, 107 ; *Russell* v. *Horn Pond Railroad Co.* 4 Gray, 607 ; *Haskins* v. *Hamilton Insurance Co.* 5 Gray, 432; *Whitman* v. *Boston & Maine Railroad,* 7 Allen, 313 ; as to the admission of evidence concerning the size of the grocery, *Hathaway* v. *Crocker,* 7 Met. 262; *Ellis* v. *Short,* 21 Pick. 142; and as to the instruction of the judge, *Dickenson* v. *Fitchburg,* 13 Gray, 546 ; *Whitman* v. *Boston & Maine Railroad,* 7 Allen, 313 ; *Upton* v. *South Reading Branch Railroad Co.* 8 Cush. 600; *Proprietors of Locks & Canals* v. *Nashua & Lowell Railroad Co.* 10 Cush. 385.

*J. P. Healy & C. H. Hill,* for the respondents, cited, in addition, upon the first point, *Boston & Worcester Railroad Co.* v. *Old Colony & Fall River Railroad Co.* 3 Allen, 142, 147, 148; *Fowler* v. *County Commissioners,* 6 Allen, 92, 96, 97; *Shattuck* v. *Stoneham Branch Railroad Co.* Ib. 115; and, upon the second point, *Dickenson* v. *Fitchburg,* 13 Gray, 555, 556; *Lincoln* v. *Taunton Copper Co.* 9 Allen, 191; *Shattuck* v. *Stoneham Branch Railroad Co.* 6 Allen, 117.

BY THE COURT. 1. We cannot say that the evidence of the witness, who was asked to give his opinion as to the value of the land and buildings taken by the defendants, was erroneously excluded. Although it is competent to offer evidence of the opinions and judgment of witnesses on such a subject, nevertheless it is always necessary to lay a foundation for this species of

proof, by first showing that the witnesses have had the means to form an intelligent opinion, derived from an adequate knowledge of the nature and kind of property in controversy, and of its value. In the case at bar, it did not appear that the witness had any acquaintance with the value of real estate in the vicinity or of that in question, except what was derived from the fact, already in proof before the jury, that he had paid a certain rent for the estate as tenant. It did not appear that he had ever bought or sold real estate, or otherwise had had any opportunity to know its value.

2. The evidence in relation to the size of a certain shop in the vicinity of the estate in controversy did not relate to a matter which was wholly collateral and immaterial. It had a direct tendency to show the weight and value which ought to be given to the testimony of the plaintiffs' witnesses in relation to the nature and size of buildings which were in demand in that neighborhood, and for the erection of which they had testified that the estate in question was peculiarly suitable.

3. We can see no error in the instructions given, or in the refusal to give that which was asked. The estate was an entire one, and not several distinct lots or parcels. The fact that it was occupied by several different buildings or tenements did not so sever it that in estimating damages the premises were to be regarded as separate estates disconnected from each other. The jury were therefore rightly instructed to deduct the direct and peculiar benefits done to the whole remaining estate of the plaintiffs, excluding those which they received in common with other owners of real estate in that vicinity.

*Exceptions overruled.*