NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY & another *vs.* JAMES E. BLACKER & another.

JAMES E. BLACKER & another *vs.* NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY & another.

SAME *vs.* INHABITANTS OF DEDHAM.

Norfolk.    November 23, 1900. — April 2, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

Under St. 1890, c. 428, § 5, amended by St. 1891, c. 123, to promote the abolition of grade crossings, in assessing the damages sustained by a petitioner in the remaining portion of a coal and lumber yard, a part of which had been taken under the act, such yard having upon it at the time of the taking spur tracks connected with the railroad, a ruling is right, that regard should be had to the premises as they were on the date of the decree changing the grade of the crossing, taking

into consideration, as affecting the market value of the property, the railroad facilities as they then existed, but with the possibility of the discontinuance of the spur tracks by the railroad company.

Under St. 1890, c. 428, § 5, amended by St. 1891, c. 123, to promote the abolition of grade crossings, consequential damages cannot be recovered. This construction is enforced by the language of the act " All damages sustained by any person in his property," but the principle is a general one not dependent on the exact phraseology. In this case, the damages excluded as consequential were the cost of moving the contents of a building cut off by the taking, waste in handling coal which had to be moved and loss from necessary interruption to business.

PETITIONS under St. 1890, c. 428, as amended by St. 1891, c. 123, for the assessment of damages caused by the abolition of a grade crossing of the New York, New Haven and Hartford Railroad over Mount Vernon Street in Dedham, filed in the first case November 17, 1897, and in the last two cases May 6, 1898.

The cases were heard in the Superior Court by *Fessenden,* J., without a jury, who at the request of the parties reported them for the consideration of this court, such judgment to be entered as law and justice might require.

The report was as follows: " I found the facts to be:

" FIRST: . . . The land had been prepared for a coal and lumber yard, and suitable buildings for that purpose erected thereon, and it has been used for that purpose for about twenty-six years. Mt. Vernon Street ran through this yard and crossed the railroad at grade. The yard extended along the track of the railroad about eight hundred feet and had been blasted out and dug down by the owners so as to be practically at grade with the railroad for the whole length. Two spur tracks had been laid from the railroad into this yard, and at the time of the taking were used and for about fourteen years had been used in conveying lumber and coal into the yard. There was no evidence of any agreement between the owners of the land and the Railroad Company that these tracks should remain or that it would deliver freight over them in the yard, and the owners did not claim any such agreement, but the Railroad Company had delivered lumber and coal over them, in some years as many as two hundred ninety cars. Several hundred cars between 1892 and 1898 were also delivered upon these tracks for parties other than the petitioners, but this was always at the request of the consignee and with the consent of the petitioners. In some of the freight tariffs, for several years, the Railroad Company advertised the siding from which these spur tracks ran as a private

siding under the name of Stone Haven, which was the name of the passenger station directly opposite the petitioners' premises. But the Railroad Company never advertised this as a siding for public delivery, nor did it ever make public deliveries from this siding or these spur tracks. The siding was also used for storing cars by the Railroad Company to some extent.

"SECOND: On the seventh day of May, 1897, by a decree of the Superior Court confirming the report of Commissioners appointed to prescribe the manner in which grade crossings of the railroad should be abolished, Mount Vernon Street was required to be raised and carried over the railroad at a height of seventeen feet above the tracks, and a strip of land belonging to the petitioners adjacent to the railroad location sixteen feet wide, and containing eleven thousand one hundred seventy-nine square feet was taken, and the grade of the railroad upon the old location and on the strip thus taken was lowered about six feet throughout the length of the yard. The taking and change of grade of Mount Vernon Street rendered it impossible to maintain the spur tracks from the railroad into the petitioners' yard and impracticable to construct any new spur tracks from the railroad into the petitioners' yard. There was no evidence that the discontinuance of these spur tracks was contemplated by the Railroad Company except as required by the execution of said decree. . . .

"THIRD: The Railroad Company was required by the law under which the decree was made to take the alterations prescribed by the report and decree of the Court, and in the spring of 1898 it entered upon the land taken and upon Mount Vernon Street and lowered the railroad and raised the street as required by the decree. This required some of the buildings containing coal and lumber on the land of the petitioners to be cut off, and made it necessary for the petitioners to move the contents.

"The coal moved amounted to 978 tons and the cost of moving the same was $120, or 12 1-4 cents per ton, and the waste caused by handling the same was $440; or 45 cents per ton. It appeared that 329 tons of coal were in the coal shed at the time of the taking and that the balance of 649 tons had been ordered prior to the taking but was placed in the shed between the time of the taking and the entry on the land by the Railroad Company.

The alterations also made it necessary for the petitioners to move lumber from one place to another as above, at an expense of $1,235. The petitioners' business in the yard was disturbed and interrupted by the alterations and the damage caused by this amounted to $750. The fair market value of the 11,179 square feet of the petitioners' land taken by the decree, including that portion of the buildings thereon, was $3,912.65.

" The petitioners contended that in assessing the damages to the remaining land caused by the taking and by the change of grade of Mount Vernon Street, I should regard the premises as they were situated on May 7, 1897, taking into consideration as affecting their market value the railroad facilities as they then existed, but with the possibility of the discontinuance of the spur tracks by the railroad.

" I ruled *pro forma* in favor of the petitioners' contention against the respondent's objection and find that the damages for the injury to the remaining land are $14,882.61. If, however, the possibility of having spur tracks was not to be considered, then I find the damages for the injury to the remaining land are $10,417.61.

" I also ruled *pro forma* that the petitioners were not entitled to recover for the cost of removing the contents of the building nor for the waste caused by handling the coal moved.

" I also ruled *pro forma* that the petitioners were not entitled to recover for the cost of moving lumber from one place to another in the yard, nor for the disturbance and interruption of their business by the alterations.

" The respondent excepted to the first ruling. The petitioners excepted to the second and third rulings.

" I assessed the total damages of the petitioners at $18,-795.26. . . ."

The case was argued at the bar in November, 1900, and afterwards was submitted on briefs to all the justices.

*C. R. Clapp,* (*H. N. Glover, Jr.* with him,) for the petitioners.

*J. H. Benton, Jr.,* for the railroad company.

LORING, J.   1. The respondent's exception to the ruling in favor of the petitioners' contention is not well taken. Their contention was that, in assessing the damages to the petitioners' remaining land, regard should be had to the premises as they

were situated on May 7, 1897, the date of the decree confirming the report of the commissioners changing the grade of the crossing in question, and "taking into consideration as affecting their market value the railroad facilities as they then existed, but with the possibility of the discontinuance of the spur tracks by the railroad."

This ruling is in accord with well settled principles. *Maynard* v. *Northampton*, 157 Mass. 218. The fact that this land was situated on the line of the railroad and at a level with it, so that spur tracks could be (as they were) built running on to it, made it valuable for any business which could be economically carried on by having freight delivered to it directly from the cars without the expense of handling and carting. That was an element which in fact gave, or might have given, value to this land, and which could properly be considered in determining what the fair market value of it was. If the respondent were right in its contention that this fact could not be considered because the petitioners had no legal right to have the spur tracks continue, the fact that a lot of land is in the business portion of a city or town in place of in the residential or other less valuable portion of it, could not be taken into consideration in determining its market value; the owner of a lot of land in the business centre of a city. has no legal right to have the business of the city done in that neighborhood; but the fact that it is done there, and is likely to continue to be done there, is a fact which affects the market value of the land. Instances, where circumstances, which exist, but which the owner has no legal right to have continue to exist, have been taken into account in determining the market value of land, are common. *Shattuck* v. *Stoneham Branch Railroad*, 6 Allen, 115. *Eastern Railroad* v. *Boston & Maine Railroad*, 111 Mass. 125. *Marsden* v. *Cambridge*, 114 Mass. 490, 492. *Williams* v. *Taunton*, 125 Mass. 34, 41. *Drury* v. *Midland Railroad*, 127 Mass. 571. *Moulton* v. *Newburyport Water Co*. 137 Mass. 163. *Providence & Worcester Railroad* v. *Worcester*, 155 Mass. 35, 42. *Fales* v. *Easthampton*, 162 Mass. 422.

The value given to the land by its being next to the railroad and on a level with it was not affected by the passage of the grade crossing act, St. 1890 c. 428, which rendered it probable that the grade would be changed by the exercise of the power of

eminent domain, *Benton* v. *Brookline*, 151 Mass. 250, nor is it material that under the statute the respondent railroad, which could have removed the spur tracks without making compensation to the petitioners had it desired to do so for business purposes, has to pay sixty-five per cent of the damages of the changes of grade.    It was found by the court that " There was no evidence that the discontinuance of these spur tracks was contemplated by the railroad company except as required by the execution of said decree " for changing the grade of this crossing.    The change which has been made was not made by the railroad for its own purposes, but was ordered by the public authorities for the convenience and safety of the public.    The fact that the Legislature has in its discretion apportioned part of the expense of making this public improvement on the railroad is an accident which is of no consequence in this connection.

2. The exceptions taken by the petitioners were not well taken.    They excepted to the rulings that they were not entitled to recover (1) the cost of moving the contents of the building which was cut off by the taking, or (2) the damages which they sustained from waste in handling the coal which had to be moved, or (3) the damages caused by the necessary interruption of their business.

On the findings entered in the report we take it to be the fact that the petitioners did suffer these damages, and it must be admitted that such damages are damages which have been suffered by the petitioners from the fact that the land and buildings taken were taken.    Whether these damages can be recovered or not depends upon this : Are the damages which can be recovered limited to the land taken or injured by the taking on the one hand, or on the other hand do they extend to and include all consequential damages suffered from the taking?    In the case of *Patterson* v. *Boston*, 23 Pick. 425, where the front of the plaintiff's store was cut off by widening a street, Chief Justice Shaw instructed the jury that the plaintiff was entitled not only to the expense of moving the goods in the store to a place of safety while a new front was being put up, and of moving them back when the new front of the store was finished, but also to the loss of profits or to the rent of another store while the work was going on.    In this court the plaintiff's right to the expense of moving the goods and

of bringing them back was admitted, and the loss of profits or the expense of the rent of the other store was contested ; it was held that the plaintiff was entitled to either the loss of profits or the rent of another store, according as one or the other was the best method of conducting the business; and in *Brooks* v. *Boston*, 19 Pick. 174, 177, a case where a street was widened on its southerly side, it was said that it might be that the owner of a store on the northerly side could recover damages for the loss in his business if he could connect it with the interruptions caused by the widening of the street. These cases were cited with approval in *Penney* v. *Commonwealth*, 173 Mass. 507 ; but that case was a case of injury to property as distinguished from consequential damages sustained from property being taken ; and so was the case of *Dodge* v. *County Commissioners*, 3 Met. 380, also relied on by the petitioners. *Brooks* v. *Boston* cannot now be regarded as authority (see *Rand* v. *Boston*, 164 Mass. 354) and the later cases have established the rule that consequential damages are not within such statutes. In *Edmands* v. *Boston*, 108 Mass. 535, it was held that the cost of moving away goods which were in a store when a portion of it was taken in widening a street, to a place of safety while the necessary repairs were being made, and the cost of bringing them back, could not be recovered ; and that the lessee of the store could not recover damages for loss of good will of his business. See p. 549. And in *Williams* v. *Commonwealth*, 168 Mass. 364, it was held that a life tenant who had been at certain expense in making the premises taken adapted to his business of a dentist, but which it was admitted did not increase the market value of the premises, could not recover for the damages so suffered by him, and on the ground that they "cannot be regarded as an element of damage, any more than the loss of good will would be." The same general rule is recognized in *Maynard* v. *Northampton*, 157 Mass. 218, 219, and in *Butchers' Slaughtering & Melting Association* v. *Commonwealth*, 169 Mass. 103, 118, 119.

We have not referred to the particular wording of the statute in question, St. 1890, c. 428, § 5, amended by St. 1891, c. 123, although it bears out this conclusion by the use of the phrase "all damages sustained by any person in his property by the taking of land "; that this clause of the section and not the

clause at the end of it is decisive of its construction see *Rand* v. *Boston*, 164 Mass. 354.    The question is a general question of construction, and though the result reached is enforced by the phraseology of this act, the same result has been reached in the cases cited above dealing with statutes where the phraseology is somewhat different.

*Exceptions overruled.*