HENRY BIGELOW WILLIAMS & another, trustees, & others *vs.*
CITY OF BOSTON.

Suffolk.    December 14, 15, 1905. — March 1, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Westminster Chambers.    Damages.    Copley Square.*

At the trial of a petition under St. 1898, c. 452, § 4, by the owners of the building
called the Westminster Chambers in Boston for damage or loss to their real
estate by reason of the limitation of the height of buildings on and near Copley
Square imposed by § 1 of that statute, the presiding judge in his discretion may
admit evidence of the value of the building as planned before the limitation of
height and of its value as finished under that limitation, of the rental value of
the two, and of the cost of completing the building in connection with evidence
showing that completing the building was the best thing to do and that the cost
so incurred was reasonable.

The provision of St. 1896, c. 313, § 1, accepted by the city council of Boston, limit-
ing the height of buildings bordering on a park where the park commissioners
have established a building line to seventy feet does not apply to the buildings
on a square where such a building line has not been established.

The violation by the owners of the Westminster Chambers in Boston of the provi-
sions of St. 1898, c. 452, § 1, by erecting "sculptured ornaments" approved by
the park commissioners extending above the height of ninety feet allowed by
that statute, they having been found to have acted in good faith on the advice
of counsel in trying to make the best use possible of their unfinished building
after the enactment of the statute, does not deprive them of the right to compen-
sation under §§ 3, 4, of the statute.

In St. 1898, c. 452, limiting the height of buildings on and near Copley Square in
Boston, § 4 gives compensation for damage or loss to real estate, and § 3 gives
to the owner of or any person having an interest in a building on the land de-
scribed in that statute in process of construction before a certain day compensa-
tion for any damage suffered from the operation of the act other than damage
or loss to real estate, the amount recoverable under one of these sections being
exclusive of anything that can be recovered under the other.  Thus extra foun-
dations and extra iron for a building one hundred and twenty feet high not
needed for a building ninety feet high, if they were incorporated in the building
before the enactment of the statute, are an element of damage under § 4 in
determining the difference in the value of the building as it was before the act
and after it, and the loss on these materials which have become part of the real
estate cannot be recovered under § 3.

THE following statement of the case is taken from the opinion
of the court :

This is a petition for compensation for damages to an unfin-
ished building now known as the Westminster Chambers caused

by the enactment of St. 1898, c. 452, limiting the height of buildings in Copley Square, Boston.    In case of the building in question, the limit was ninety feet.

One petition, and but one, was brought to recover compensation under § 3 and § 4 of that act.    The petitioners were Henry Bigelow Williams and Babson S. Ladd, Trustees of the Westminster Chambers Trust; the Westminster Construction Company, a State of Maine corporation; the Fawcett Ventilated Fireproof Building Company, Limited, a Pennsylvania corporation; and Isaac F. Woodbury and George E. Leighton, copartners doing business under the firm name of Woodbury and Leighton.

Williams and Ladd, trustees, were the owners of the building, the Westminster Construction Company was the general contractor for the whole building, and the Fawcett Company and Woodbury and Leighton were the sub-contractors who between them were to do all the work contracted for by the construction company.

By the contract between the trustees and the construction company, made on September 1, 1897, the construction company was to erect on the corner of St. James Avenue and Trinity Place a ten story apartment house, one hundred and twenty feet in height, to be known as the Westminster Chambers.    Before any work had been done upon the building it was decided to make the building a hotel in place of an apartment house.

On May 23, 1898, the date of the enactment of St. 1898, c. 452, the piles for the new building had been driven, the foundation walls were in (forming a basement nine feet in height, part below and part above the ground), and the exterior walls had been carried up some thirty-six to forty feet, being the exterior walls of the basement (above the ground) and of the first three stories.    The iron frame was up five or six stories, and above that there were one or two of the uprights seventy to ninety feet from the ground.    Four floors had been laid roughly, with concrete and fireproofing.

It was agreed before the petition was brought that the respondent would make no objection on account of misjoinder or nonjoinder of parties and that all parties could join in one petition.    It was agreed subsequently between the petitioners, no objection being made by the respondent, that all damages due under § 4 should be awarded to the trustees, and those under

§ 3 to Woodbury and Leighton, and "that the auditor in computing these damages should deduct from the damage awarded under the first section any duplication of items arising from the award of damages under the third section of the act."

The case was sent to an auditor, who found for the trustees in the sum of $258,710.05, with interest from May 23, 1898, and for Woodbury and Leighton in the sum of $49,989.95, with interest from the same date. This $49,989.95 was made up as follows:

| | | | |
|---|---|---|---|
| 1. | Architect's additional services, | | $3,000.00 |
| 2. | Changing balconies, | | 3,604.00 |
| 3. | Iron thirty feet at top of building not used, | $10,743.00 | |
| | Less old iron, | 179.05 | |
| | | | 10,563.95 |
| 4. | Fireproof material not used, | $7,384.00 | |
| | Less returned, | 4,270.00 | |
| | | | 3,114.00 |
| 5. | Ornamental terra cotta not used, | | 14,018.00 |
| 6. | Carting terra cotta away, | | 300.00 |
| 7. | Loss of front brick, | | 240.00 |
| 8. | Cost of plans and specifications not used in the new design, | | 4,000.00 |
| 9. | Extra foundation not needed for a ninety foot building, | | 2,243.00 |
| 10. | Extra iron in superstructure not needed for a ninety foot building, | | 2,907.00 |
| 11. | Allowance for two months' time to make necessary changes, | | 6,000.00 |
| | | | $49,989.95 |

The auditor further found that items 1, 2, 7, 8, 9 and 10, amounting to $15,994, were duplicated, and accordingly deducted these sums from the $258,710.05, awarded to the trustees, making the amount finally awarded to them $242,716.05.

The case came on for trial in the Superior Court. The jury found that the damages due to the trustees, including interest, was $410,843.12, and that those due Woodbury and Leighton

were $71,127.36, including interest. As a condition in denying a motion made by the respondent for a new trial, the judge directed the trustees to remit all due to the trustees in excess of $284,600, which the petitioners have done.

It appeared from the testimony at the trial and from the auditor's report that since the enactment of St. 1898, c. 452, the hotel had been completed as an eight story hotel, the eighth story being seriously reduced in height and rendered less valuable by the necessity of carrying pipes under its ceiling, and other changes.

It also appeared that after the passage of St. 1898, c. 452, the park commissioners had granted a license to erect sculptured ornaments on the building, which made it a ninety-six foot in place of a ninety foot building. This was finally removed, we assume in compliance with the decrees in *Attorney General* v. *Williams*, 174 Mass. 476; *S. C.* 178 Mass. 330, affirmed on appeal, *sub nomine Williams* v. *Parker*, 188 U. S. 491.

Mr. Leighton testified in behalf of the petitioners "that the work which had been done in the erection of a wall above the height of ninety feet, as complained of in the bill of complaint brought by the City of Boston, July 25, 1898, and which had been removed in consequence of a decree of the Supreme Court, was necessary to the support of the frieze and sculptured ornaments which had been approved by the park commissioners, and that the frieze could not have been supported without said wall unless another story of the building had been sacrificed, and that the work had been done in good faith and under legal advice, that it was authorized by the action of the park commissioners."

At the trial the petitioners were allowed under the exception of the respondent to prove by experts that the fair rental value of the hotel originally contemplated would have been $50,000 a year, and that of the hotel as finished was $30,000; that the amount actually expended on the hotel as it is (excluding the cost of putting up and taking down the sculptured ornaments) was $689,000, making together with the value of the land, a total cost of $1,054,000 ; also that the value of the hotel as originally contemplated would have been $1,000,000, including the land at $365,000 and the fair value of the hotel as it was,

$600,000; and finally that the cost of the hotel as originally planned would have been $573,000 as against $689,000 for the hotel as it is. The petitioners were also allowed under the respondent's exception to show the actual cost of finishing the present hotel in addition to the sums expended before the enactment of St. 1898, c. 452.

The petitioners produced evidence that $215,000 had been expended on the hotel at the date of the enactment of St. 1898, c. 452, and in addition that about $135,000 represented the architects' and promoters' fees, taxes, interest and other carrying charges. The respondent's experts gave it as their opinion that the fair cost of the building as it existed on the ground at that time was $114,000 to $136,700. The testimony of these witnesses was to the effect that the damage to the land and building was much less than the amounts found by the auditor or the revised verdict, "said witnesses giving as their opinion that all the damages coming to the incomplete building by reason of the act were covered by items in the third section of the act."

There was evidence that after the passage of the act the method adopted by the petitioners for completing the building as it now stands was a reasonable and proper method for securing the most value from the premises, and that the cost of the work and materials in building was reasonable.

The respondent contended that buildings on the lot in question were restricted to seventy feet by Sts. 1896, c. 313, and 1897, c. 379, on the ground that the land bounded by Huntington Avenue, St. James Avenue and Trinity Place was a public park. It was not contended that a building line on St. James Avenue or Copley Square had been established under Sts. 1896 and 1897 before May 23, 1898.

At the conclusion of the evidence the respondent asked for the following rulings :

" 1. By the provisions of section 1 of chapter 313 of the acts of 1896, which act was accepted by the city council of Boston May 14, 1897, the height of buildings upon a street which bordered on a park was limited to seventy feet. The grass plot on St. James Avenue forming part of Copley Square had been acquired by the park commissioners as a public park and was a

public park within the meaning of said act, and St. James Avenue was a street or way bordering upon said park.   As the petitioners could not build upon their land to a height of more than seventy feet before the passage of the act of 1898, and could build to a height of ninety feet afterwards they received no damage under this act.

" 2.  It appearing by the uncontradicted testimony in this case that the petitioners, instead of complying with the provisions of the act, built their building above the height of ninety feet, they cannot recover damages under an act which they did not obey.   The petitioners cannot claim the benefits which would have accrued to them under the act if they had obeyed it when they have disobeyed it.   You will therefore find a verdict for the defendant.

" 3.  Section 3 of chapter 452 of the acts of 1898 provides in its terms for all damages sustained by the owners of this particular building as far as the building itself is concerned, and gave them a petition to be brought within two years from the passage of this act.   While the damages to all other property limited in height by this act are to be assessed in the ordinary manner in which other real estate damage is to be assessed when highways are laid out this particular property is divided into two parts, the land and the incomplete building, and the damage to the building is to be recovered as a specific and independent item and then added to the depreciation, if any, in the value of the land.   Any other interpretation of the act would give the owner of this land double damages for any depreciation in value which came to his incomplete building."

In his charge to the jury the presiding judge told them that the question under § 4 of the act was:  What was the injury to the market value of the land of the petitioners with the unfinished building upon it caused by the limitation upon the height of buildings created by St. 1898, c. 452; that " in so far as the materials had been collected together and affixed to the soil, their character as personal property was changed; they became real estate.   In so far as the building which was designed and planned and in course of construction remained to be completed, rested simply in contract between the owners and the other contracting parties, it was not real estate, it was in the nature of a

business carried on upon that property, and injury to it so far as it remained unexecuted is not a subject for the assessment of damages under § 4 of this act"; and coming to the question of the unfinished building, the jury might take the land and the building separately in arriving at the value of the real estate on May 23, 1898, or they could arrive at that value without separating them, as they chose; that the unfinished building being a part of a hotel building planned to be ten stories high and extending one hundred and twenty feet above the soil, " for the purpose of assisting the jury to come to a conclusion as to what the market value of it was, evidence has been introduced as to what the value of the whole building with the land together would have been if the building had been completed according to the original plan and design. That evidence as to the value of the completed building, if it had been completed according to the original design is to be used . . . as an aid to the jury, so far as the jury find that it is an aid to them, in coming to a conclusion as to the market value of the land and unfinished building on May 23, at the time of the passage of this act — either the land and the unfinished building together as a whole, or the value of the unfinished building as a part of the whole. In like manner, evidence as to the cost of the construction of that building up to the point it had reached in the course of construction on the 23d of May, 1898, has been admitted. That evidence also is admitted as an aid to the jury in coming to a conclusion as to the market value of the property in question, the land and the unfinished building upon it, at the time of the passage of the act." Later, he told them that " In determining that question you are to apply similar rules to those which I have stated in determining the value of the property before the act. What occurred after the passage of the act in the intervening time between May 23, 1898, and the present time, so far as it has appeared in evidence before you by the testimony of witnesses, and so far as you have acquired the knowledge of the events which occurred in that intervening time by your view of the property — those facts are to be used merely as an aid to assist you in determining what the property was worth immediately after the passage of this act. At that time the building stood there unfinished, although it was in the course of erection; but

it was in fact an unfinished structure. It is a question for the jury to consider what was the reasonable and most advantageous use that could be made of it after the passage of this act — that is, made of the property, the land and the building in its unfinished state, taken together. Applying the principles which I have already stated, you are to determine what that value was, and the difference between the value of the unfinished structure and the land together, after the passage of the act, and the value of the land and the unfinished structure before the passage of the act, is the amount of compensation to which the owners are entitled under § 4 of this act.

" In regard to the completion of the building, the jury have heard evidence as to what the cost of completing it was, and have also heard evidence as to what the value of the building is as completed, and after being completed in accordance with the provisions of the act, that is, within the limitation fixed by law. That evidence was admitted and may be considered just like the evidence of the value of the original structure as it was designed, if it had been completed, for the purpose of aiding you to determine the value at the time of the passage of the act, May 23, 1898. In coming to a conclusion as to how much the market value of the property was after the passage of the act, you may consider the testimony in the case relating to the value of the finished building, that is, finished in accordance with the provisions of the law, and also evidence of the cost that was incurred in completing the building under the height of ninety feet, within the provisions of the law. If you find that the building was put forward in a reasonable manner, reasonably constructed and at reasonable cost, and that the owners acted prudently in completing the construction of the building under the provisions of the law, then you may consider that cost incurred in coming to a conclusion as to what the value of the land and unfinished building was after the passage of the act. In like manner, you may consider for the same purpose the value of the finished building."

In explaining § 3 of the act, the presiding judge instructed the jury as follows:

" I wish, however, to make clear to you that under the construction which I have given to you as the true construction of

this special statute, there is no conflict between the provisions of § 4 and the provisions of § 3. For example: Under the provisions of § 3 it is conceded by all parties in this case that the following items are proper elements of damage, to wit:

Item 9: Extra foundation not needed for a 90
　　foot building . . . . . . . $2,243
Item 10: Extra iron in superstructure not needed
　　for a 90 foot building . . . . . $2,907

"As the court understands the evidence, so far as the foundations were concerned, the foundations had been actually put in. They were put in as foundations for a ten story building to be one hundred and twenty feet in height. They were heavier, stronger, in some respects probably, at any rate different from what they would have been if they were designed and intended from the beginning for a building to be only ninety feet in height. The consequence is, the owners being, after the passage of this act, no longer permitted to construct a building to a height of one hundred and twenty feet, they have put in the form of foundations material which serves no useful purpose as foundations for a ninety foot building. It is an example of what might be called wasted material, and if wasted in consequence of the passage of the act, all parties concede it is a proper element for compensation under § 3 of the act.

"Similar observations apply to item 10 which I read, ' Extra iron in superstructure not needed for a ninety foot building.' The evidence shows without contradiction that there was a considerable part of the iron for the superstructure of a ten story building actually put in place. So far as that iron was heavier, more expensive or different for a ten story building than it needed to be for a ninety foot building, it is an element for compensation under § 3 of this act. But what about it under § 4 of the act? As I have instructed you, under § 4 your inquiry is, What was the injury to the market value of the property? If purchasers wished to buy that property and found that there was in it material that was not needed, whether in the form of unnecessary iron or unnecessary granite, after the passage of this act, they would not pay as much for it. That would affect the market value and would be thrown out by purchasers in considering

what would be a fair price to pay. So that under § 4 of the act those items would have no effect whatever upon the value, and you do not have to consider them in determining the market value of the property before and after the passage of the act, for the purpose of assessing the injury to the value under § 4. That section deals with diminished value, what price a purchaser desiring to buy would be willing to give ; what price an owner desiring to sell would be willing to receive in the exercise of good sound judgment upon the facts in the case. . . .

" The sum which you find under § 3 as the amount of damage proved under that section, with interest added, will represent the amount to which the petitioners are entitled under that section. It will not be necessary for you to make any deductions from that sum by reason of any duplication of items in that sum which were previously included in the assessment under § 4. The two sections provide for entirely different elements of damage ; and if you apply, in assessing damages under § 4, the principles which I have stated, directing your attention to injury to market value, there will be no duplication of items. The work under each section can be performed entirely separately."

On the conclusion of the charge the respondent excepted to the refusal to rule as requested, and " to those portions of the charge which are contradictory to the said requests, and to the portion of the charge in which the judge ruled in substance that it would not be necessary to make reductions from the diminution in the market value of the land and building assessed under § 4 on account of duplication of damages to the incomplete building under these two sections."

By an amendment to the bill of exceptions, it is further stated that :

" The petitioners made no claim for damages under § 3 except for the items stated in Woodbury and Leighton's bill, and the only items in this bill disputed by the respondent were numbers 1, 5, 8 and 11.

" In regard to number 5 the respondent's claim was that $10,000 of this amount was for terra cotta used in the erection of the wall above 90 feet, the petitioners claiming that this terra cotta had been specially designed and made for this building and that thus it was useless for any other purpose.

" The finding of the jury under § 3 was for the amount of Woodbury and Leighton's bill with interest.

" No request was made by the respondent for rulings in reference to duplication except so far as it may be covered by the requests herein stated, and the attention of the court was not called to its instructions in that respect except by the requests herein stated and by the statement of the respondent's counsel (which statement he repeated), made after the charge was given and assented to by the court that he excepted, in connection with his exceptions to the refusal of the court to give the third request, to wit, that § 3 was intended to cover all the damages which would come to the incomplete building, to that portion of the charge where the court said in substance: ' It will not be necessary to make deductions on account of the duplication of the damages to the incomplete building under §§ 3 and 4 of the act.' There was no evidence of duplication of any of the items in Woodbury and Leighton's bill unless the same may be found in this bill of exceptions, the respondent's claim being that as a matter of law certain items in § 3 are damages to the market value of the incomplete building."

*R. M. Morse,* (*W. P. Everts* with him,) for the petitioners.

*T. M. Babson,* for the respondent.

LORING, J. [After the foregoing statement of the case.] 1. We are of opinion that the testimony of the value of the building as planned and finished, the rental value of the two and. the cost of completing the building (the latter taken in connection with the testimony that completing the building was the best thing to be done, and that the cost so incurred was reasonable) were all admissible in the discretion of the presiding judge for the purposes explained in the charge, upon the issue under § 4, to wit, what was the value of the land and unfinished building before the enactment of the act, and what was its value after. We see nothing in the cases cited by the respondent to the contrary. *Chase* v. *Worcester,* 108 Mass. 60. *Pinkham* v. *Chelmsford,* 109 Mass. 225. *Cobb* v. *Boston,* 109 Mass. 438. *Fairbanks* v. *Fitchburg,* 110 Mass. 224. *Boles* v. *Boston,* 136 Mass. 398. *Cushing* v. *Boston,* 144 Mass. 317. *Maynard* v. *Northampton,* 157 Mass. 218.

2. The first ruling requested was rightly refused. · The re-

strictions in Sts. 1896, c. 313, and 1897, c. 379, apply only to parkways on which a building line has been established as therein provided.

3. It is now established that in erecting the sculptured ornaments the trustees acted in violation of St. 1898, c. 452. But the jury were warranted in finding that they did so on the advice of counsel, and acted in good faith in trying to make the best use that could be made of the unfinished building. Under those circumstances, at any rate, they did not lose their right to compensation under this act.

4. The third ruling was also rightly refused. In our opinion all damages to the real estate are recoverable under § 4, and all other damages are recoverable under § 3. Section 3 was in our opinion inserted to give to the owners of the real estate compensation for damages which they could not recover as owners of the real estate, and to give compensation for damages suffered by them to other persons having an interest in any building covered by the act (a contractor for example) who but for § 3 would have no claim to compensation. Rightly applied, there would be no duplication of compensation.

5. But we are of opinion that the two sections were not rightly applied. In our opinion not only is there a possibility that there may have been compensation awarded twice for the same damages, but of necessity there was such a duplication. The judge told the jury that items 9 and 10, being items for extra foundations and extra iron put in for a one hundred and twenty foot building and not needed for a ninety foot building, were proper elements of damage under § 3. If these had been bought and paid for by the owners before the enactment of St. 1898, c..452, but had not been incorporated into the building, they would have been proper items to be recovered under § 3. Under the circumstances just put, had no such provision been in the act as those contained in § 3, no compensation for these items could have been obtained. Section 4, limiting the compensation due to damage or loss in his property, is restricted to damage or loss to his real estate. For other damage or loss he is remediless under that section. See in that connection, *New York, New Haven, & Hartford Railroad* v. *Blacker*, 178 Mass. 386, and cases cited; *Sawyer* v. *Commonwealth*, 182 Mass. 245, 247;

*Bailey* v. *Boston & Providence Railroad*, 182 Mass. 537, 539 ; *Boston Belting Co.* v. *Boston*, 183 Mass. 254 ; *Nashua River Paper Co.* v. *Commonwealth*, 184 Mass. 279. The object of § 3 was to enable the owner to recover damages of that character to which he otherwise would not be entitled. It was also evidently intended to allow third persons having an interest in the building who had suffered loss in the limitation of the height of the building to recover for such loss.

In the case at bar the right to compensation under the two sections would have been plainer if the parties had brought and proved the proper petitions by the several parties, in place of bringing one petition in which all joined, and agreeing that all compensation due under § 3 should be paid to Woodbury and Leighton, whether due to them or to any one of the other petitioners.

As we have said, money expended for items 9 and 10, if not incorporated into the building, would have been proper items for compensation under § 3. But when they were incorporated in the building they necessarily entered into the difference between the value of the building as it was before the act and its value as it was after the height to which it could be built had been limited by the act to ninety feet. It would be hard to state this more clearly than it was stated in the charge of the presiding judge when he said, in speaking of these very items 9 and 10 : " If purchasers wished to buy that property and found that there was in it material that was not needed, whether in the form of unnecessary iron or unnecessary granite, after the passage of this act, they would not pay as much for it. That would affect the market value and would be thrown out by purchasers in considering what would be a fair price to pay." If the unnecessary iron and foundations which added to the value before the act as part of a hotel one hundred and twenty feet high would be thrown out by a purchaser in fixing a price for the unfinished building after it was limited by the act to ninety feet, the loss represented by these two items is included in the decrease in the market value of the unfinished building. And the jury should have been instructed accordingly. The auditor was right in holding that the amount of these two items was duplicated, and seems also to have been right in holding that the other items

deducted by him (to wit, items 1, 2, 7 and 8) were duplicated. Whether he was right as to items 1, 2, 7 and 8 it is not necessary now to decide finally. The facts stated in the record as to these items are not altogether plain.

But the auditor was not right in deducting these items, nor were the parties right in agreeing that any items should be deducted. As we have said, compensation cannot be recovered for the same items under both sections. Compensation for items 9 and 10 being recoverable under § 4, cannot be recovered under § 3, and the same is true of any of the other items compensation for which can be recovered under § 4. If compensation for an item can be recovered under § 4, that item does not come within § 3. In no event can there be double compensation for the same item ; and in no case can there be any deduction for duplication if the two sections are properly applied.

*Exceptions sustained.*