FIFTY ASSOCIATES vs. CITY OF BOSTON.

Suffolk.   January 20, 1909. — May 18, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*East Boston Tunnel.   Way*, Public easement.   *Damages*, For property taken or injured under statutory authority.

Although the public easement in a street includes the use of the land below the surface as well as the use of the surface, and although for this reason the Legislature might authorize the construction of a tunnel under the surface of a street without making compensation to the owners of the fee in the land through which it passes, yet by St. 1894, c. 548, §§ 26, 34, as amended by St. 1895, c. 440, § 1, the Legislature did not do this in authorizing the construction of the East Boston tunnel, but on the contrary gave rights to damages like those given by R. L. c. 48, § 15, in case of the laying out of highways.

Under St. 1894, c. 548, § 34, as amended by St. 1895, c. 440, § 1, the owner of land on State Street in Boston whose cellar is flooded owing to the removal, in the

construction of the East Boston tunnel, of a clay wall built by such owner on his own land to keep out the tide water, is entitled to compensation for the injury caused by such authorized removal.

At the trial of a petition by the owner of land on State Street in Boston against that city under St. 1894, c. 548, § 34, as amended by St. 1895, c. 440, § 1, for damages caused to his land by the construction of the East Boston tunnel and a station connected with it, the respondent is not entitled to have the jury in estimating the damages take into account the benefit received by the petitioner's property from the tunnel and the station or from having passengers from the tunnel landed at the door of a store in the petitioner's building, these being benefits which in character are common to all the buildings and stores in the immediate neighborhood, and are not special and peculiar benefits to the property of the petitioner, even if they are greater in degree in case of his property.

The decision in *Shattuck* v. *Stoneham Branch Railroad*, 6 Allen, 115, of the point, that upon a petition for the assessment of damages caused to the land of the petitioner by the construction of a railroad the respondent may introduce evidence of the location of a passenger station near the petitioner's land, criticised.

Upon a petition under St. 1894, c. 548, § 34, as amended by St. 1895, c. 440, § 1, by the owner of land on State Street in Boston for damages caused to his land by the construction of the East Boston tunnel, the petitioner may recover a sum of money reasonably expended by him in paying a competent person to watch the petitioner's property and see to it that proper precautions were taken to make the physical damage as small as was practically possible, such an expense being limited to the land taken and not a mere consequential damage.

PETITION, filed on August 8, 1903, by the Fifty Associates, a corporation, against the city of Boston, under St. 1894, c. 548, §§ 26, 34, St. 1895, c. 440, § 1, St. 1897, c. 580, St. 1902, c. 114, and acts amendatory to those statutes, for the assessment of damages alleged to have been caused during the years 1902 and 1903 to the estate of the petitioner on State Street in Boston numbered 276, 278, 280, 282, 284 and 286 by the construction of the East Boston tunnel.

In the Superior Court the case was tried before *Harris*, J. The following statement of the case and of the questions raised by the bill of exceptions is taken from the brief of the counsel for the respondent.

The Boston transit commission, being duly authorized by the Legislature, built a subway or tunnel in State Street in front of the plaintiff's premises. A station was constructed as a part of this work in front of that one of the plaintiff's three buildings lying nearest the water and extending from there towards Atlantic Avenue, there connecting by means of elevators with the elevated railway in Atlantic Avenue.

The plaintiff's property consisted of three adjoining brick and stone buildings of four stories and a basement, each on the north side of State Street. The tunnel or subway proper was constructed entirely beneath the surface, but the station was constructed from the surface down. In consequence of the construction of the subway and station at this point the plaintiff's buildings began to settle and were shored up by the contractor or contractors. After the walls of the station were put in, the shoring was removed and the settling stopped, but the buildings had settled during this period, the settling varying from two and one half inches at the pier at the front of the most westerly party wall to four and five-eighths inches at the pier between numbers 286 and 288 State Street, being the pier supporting the party walls of the easterly building of the plaintiff and its next neighbor.

It appeared, also, that when these buildings were built many years ago the basements were below tide water level, and that, instead of waterproofing the basements or cellars and making them tight, the then owners of the block put a coffer dam or water tight structure around the whole block, the southerly side of which structure ran in State Street parallel with the buildings and between the curbstone and the wall of the subway. It appeared by testimony in the case that this clay wall or dam was injured more or less by the building of the subway, and that, in consequence of this, water in large quantities came at times of high tide into the cellars or basements of the plaintiff's buildings.

The defendant offered testimony which tended to show that the clay dam had been pierced occasionally in the past by gas pipes, water pipes and other things, connecting things in the street with the buildings, and that for a long time before the building of the subway or tunnel water had come into the cellars at such openings at high tide.

The plaintiff contended that it was entitled to recover the expense of waterproofing the cellars or basements, estimated by its experts at from $3,000 to $4,000, the defendant contending that it ought not to pay for such waterproofing.

The judge ruled among other things in reference to this subject, " that any boxings or any structure that the owners of this

particular piece of property or the original owners of this whole block had put into the street for their own purpose, having been put in long after the public rights had been acquired in the street, were not structures whose destruction or removal gives them any right, by reason of that destruction or removal, to claim damages."

The plaintiff's testimony tended to show that the necessary repairs beyond what had been made by the city or its contractors after the completion of the work would cost, including the waterproofing, from $4,100 to $6,600. The defendant's experts testified that the necessary repairs would cost only a few hundred dollars. The plaintiff's experts testified that in addition to the repairs there would be an injury to the market value of the estate of some $10,000, arising apparently from two causes, — first, that a purchaser would know that the building had settled and might fear that it would settle more; or, second, if he were going to buy the property for the purpose of putting up a new building, that the presence of the subway might cause the new building to settle.

The defendant's testimony tended to show that the putting of the walls of the subway and station in the street tended to support the filling and flats mud, and that after the material had adjusted itself to the new conditions the material underneath the plaintiff's buildings would be more stable than before the subway was put in the street. The testimony of the city's experts was that the presence of the station in front of the plaintiff's property was of special benefit to its real estate and increased the value of its property instead of impairing it.

The jury returned a verdict for the petitioner in the sum of $1,000; and the petitioner alleged exceptions.

The questions raised by the bill of exceptions were, first, as to whether the judge was right in ruling that the special and peculiar benefits, if any, which came to this property by reason of having the station in front of it could be offset against the damage, if any, to the market value of the property. Incidental to this question were the questions as to whether the testimony offered by the defendant as to the number of passengers using this station was competent, and as to some requests of the plaintiff for rulings.

Second, as to whether the judge was right in ruling that the plaintiff could not recover for the damage, if any, sustained by the weakening or injury to its dam or structure in the street.

Third, as to the judge's ruling that the plaintiff could not recover as a specific item for the bill of one Adams for watching the buildings for the plaintiff while the subway and the station were being constructed.

*H. E. Bolles*, (*A. Kendall* with him,) for the petitioner.

*T. M. Babson*, for the respondent.

LORING, J.   1. We are of opinion that the presiding judge was wrong in ruling that the petitioner was not entitled to recover damages for water coming into the cellar by reason of the removal of the bulkhead.   The case was tried on the footing that the petitioner had the rights " of an ordinary abutter " in State Street.   That assumes that the petitioner owned the fee in his half of the street subject to the public right to use it for street uses.

Counsel for the respondent has contended that the ruling was right on the ground that street uses include the use of the land below the surface of a street as well as the use of the surface itself, and that a tunnel for cars is a street use.   The counsel is doubtless right as to the proposition which he takes as the ground of his argument, but in our opinion he is wrong in the conclusion which he contends for based on that proposition. That the public easement in a street includes the use of the land below the surface as well as the use of the surface, and that a tunnel is a street use was established in *Sears* v. *Crocker*, 184 Mass. 586.   It is also established that the Legislature might have authorized the building of this tunnel without making compensation for bringing to an end the use which the petitioner as owner of the fee had theretofore made of the land under the street.   See *Boston Electric Light Co.* v. *Boston Terminal Co.* 184 Mass. 566.

But the question we have to decide is whether as matter of construction of St. 1894, c. 548, § 34, as amended by St. 1895, c. 440, § 1, that is what the Legislature did ; and we are of opinion that it is not.

The terms of the statute here in question are like those in case of highways.   R. L. c. 48, § 15.

The question whether such statutes should be limited as matter of construction to acts done which are in violation of common law rights protected by the Constitution, or should be extended to include all acts which in fact cause injury of a special and peculiar kind although not a violation of common law rights protected by the Constitution, was for a long time a question on which the decisions of this court were not all in accord. The question was put at rest by the decision in *Hyde* v. *Fall River,* 189 Mass. 439, in which it was held that such statutes are to be construed to give compensation for all injuries, special and peculiar, and not to be limited to violations of common law rights protected by the Constitution. See also in this connection *Whitney* v. *Commonwealth,* 190 Mass. 531; *McKeon* v. *New England Railroad,* 199 Mass. 292. Although the city had a right to remove the bulkhead, yet if the removal caused an injury to the petitioner's property, the petitioner, by virtue of St. 1895, c. 440, is entitled to compensation therefor.

It follows that the exception must be sustained which was taken to the following portion of the charge of the presiding judge : " I rule for the purposes of this case, that any boxing or any structure that the owners of this particular piece of property, or the original owners of this whole block, had put into the street for their own purpose, having been put in long after the public rights had been acquired in the street, is not a structure whose destruction or removal gives them any right, by reason of that destruction or removal, to claim damages. Therefore that is not an injury to property which of itself entitles them to any damages in this case."

2. The petitioner asked the presiding judge to give the following ruling: " The plaintiff in this petition is entitled to recover all damages sustained by it to the property in question occasioned by the construction of the tunnel and its station, and in estimating such damages you are not to take into account the benefit, if any, received by said property from said tunnel and station." This was refused, and the instruction on this point given to the jury was in substance: That if out of the fact that passengers from the tunnel were landed at the door of the petitioner's store anything had resulted which is a benefit to that store, " something directly affecting this estate and others just

like it," that benefit could be set off against the damage from the tunnel after the physical damage from the settling of the building had been made good.

We are of opinion that the exception taken to the refusal to give this ruling must be sustained.

The question of the damage done and the benefits which can be set off against it in the case at bar under St. 1895, c. 440, § 1, is the same as that arising where action is taken under the highway act, R. L. c. 48, § 15, and not under the betterment act, R. L. c. 50. For the difference between the two, see *Benton* v. *Brookline*, 151 Mass. 250; *Atkinson* v. *Newton*, 169 Mass. 240.

In cases arising under the highway act and similar statutes, the only benefit which can be set off against the damages due to a petitioner for taking his land or other injury done to his property are those which are special and peculiar to the land or property in question. Benefits which are common to the neighborhood cannot be set off. The difference is well illustrated by the instruction given and approved by this court in *Whitney* v. *Boston*, 98 Mass. 312. In that case a court extending from Washington Street towards Tremont Street was made a street extending to Tremont Street by taking a part of the petitioner's land. The jury were told that the defendant city could set off benefits to the petitioner's estate by reason of its being made a corner lot or by reason of a more convenient access to the rear part thereof, but " the fact, if it be a fact, that the estates fronting on La Grange Place are benefited in other or different ways, such as increased business on the street or in the neighborhood, or in increased facilities for converting dwellings into places of business, would not affect the respondents' claim to have the peculiar benefits set off." Of this charge this court said : " The jury were therefore rightly instructed to deduct the direct and peculiar benefits done to the whole remaining estate of the plaintiffs, excluding those which they received in common with other owners of real estate in that vicinity."

There are cases where the same benefit peculiar to each estate accrues to all the estates in the same street. Compare *Hilbourne* v. *Suffolk*, 120 Mass. 393, with *Parks* v. *Hampden*, 120 Mass. 395. See also *Abbott* v. *Cottage City*, 143 Mass. 521, 526, and the cases there cited. But the test is this: Is the benefit in its

character a neighborhood benefit ? If it is it cannot be set off. The test is not: Is the benefit one which others in the street share ?

This rule has been applied in a number of cases. *Upton* v. *South Reading Branch Railroad*, 8 Cush. 600. *Dickenson* v. *Fitchburg*, 13 Gray, 546. *Whitney* v. *Boston*, 98 Mass. 312. *Allen* v. *Charlestown*, 109 Mass. 243. *Parks* v. *Hampden*, 120 Mass. 395. *Cross* v. *Plymouth*, 125 Mass. 557. See in this connection *Peabody* v. *Boston Elevated Railway*, 191 Mass. 513, 518.

The benefit coming from landing the passengers using the tunnel at the door of the petitioner's building is in our opinion a benefit in character common to all stores in the immediate neighborhood and so is not one peculiar to the petitioner, and therefore cannot be set off. It comes within the second class stated in *Upham* v. *Worcester*, 113 Mass. 97, 98, 99. That is to say, it is a benefit which would be the subject of a betterment assessment if the Legislature had authorized a betterment assessment in connection with the construction of this tunnel.

The doubt which arises on this point comes from the decision of this court in *Shattuck* v. *Stoneham Branch Railroad*, 6 Allen, 115. It was held in that case that it was error to exclude evidence offered by the defendant corporation " that since the hearing began their directors had located a passenger station at a place near the petitioner's land which the railroad crossed." The decision was made without discussion, on the authority of *Brown* v. *Providence, Warren & Bristol Railroad*, 5 Gray, 35. The decision in *Brown* v. *Providence, Warren & Bristol Railroad* was that it was error to admit evidence that if a station were thereafter to be located near the land, part of which was taken, it would benefit the remaining land of the petitioner. All that the court there said was: " If they would make it a substantive ground for reduction of damages, they should proceed to locate it; which being done, the fact of the location of the station will be easily made certain, and the further important fact will be apparent, whether the benefits accruing therefrom are such as are peculiar to the plaintiff, or only a benefit to his estate, which he shares in common with others from the establishment of the railroad." It is apparent that the court in

*Brown* v. *Providence, Bristol & Warren Railroad* did not go so far as to decide that the location of a railroad station " near the petitioner's land which the railroad crossed would result in benefits peculiar to the plaintiff " as distinguished from " a benefit to his estate, which he shares in common with others."

The only case in this Commonwealth in which *Shattuck* v. *Stoneham Branch Railroad* has been cited on the point now under consideration is *Childs* v. *New Haven & Northampton Co.* 133 Mass. 253. In that case evidence was rejected " of a convenient place of delivery at a new depot of said railroad." The exception to the rejection of this evidence was overruled. In overruling it the court said: " It is true that in *Shattuck* v. *Stoneham Branch Railroad*, 6 Allen, 115, evidence of the location of a passenger station in the immediate vicinity of the land taken was held admissible. The certificate in the present case does not show how near to the land taken the station of the respondent was to be. It is perhaps fairly to be inferred, from the fact that there was evidence of a station ' of another railroad more accessible from the petitioner's woodland by the distance of one third of a mile,' that it was not in its immediate vicinity. Certainly, the offer of the respondent does not show that, as located, it could have been of any special or peculiar benefit to the petitioner."

There is an earlier case not referred to in *Shattuck* v. *Stoneham Branch Railroad*, 6 Allen, 115, which goes far toward being a decision in conflict with the rule apparently established in that case. That is the case of *Meacham* v. *Fitchburg Railroad*, 4 Cush. 291. The charge of the presiding judge was this: If " the laying out and construction of the respondents' railroad had created or occasioned any benefit or advantage to the lands of the petitioner, described in his petition or immediately adjoining or connected therewith, rendering the part not actually occupied by the respondents more convenient or useful to the petitioner, or giving it some peculiar increase of value in the market, as compared with other lands generally in the vicinity, it would be their duty to allow for such benefit or increase of value by way of set-off, in favor of the respondents; but that, on the other hand, if the construction of the respondents' railroad, by increasing the convenience of Watertown generally as a place

of residence, and by its anticipated and peculiar effect or in-
fluence in increasing the population, business and general pros-
perity of the place, had been the occasion of an increase in the
salable value of real estate generally near their depot, including
the petitioner's said lands, and thereby occasioning a benefit or
advantage to him in common with other real estate owners in
the vicinity, this benefit would be too contingent, indirect and
remote, to be brought into consideration in this question of
damages to a particular parcel of land." After considering the
first part of this instruction this court said: "The further in-
structions to the jury upon this point seem to have been entirely
correct, and in accordance with the principle of the other ruling.
The respondents are not to have the benefit of any increase in
value of the petitioner's adjacent land, so far as he has been
benefited by the railroad, merely in common with all the citizens
of the neighborhood or village, by the anticipated general rise
of property, by reason of the railroad's passing through the
town and in the vicinity of their lands. It is only the increased
value of the land of the petitioner, arising from the location of
the road over some part of it, which is to be taken into con-
sideration. If such location over the land of the petitioner has
raised the value of his adjacent lands, then a reduction or off-
set is to be allowed the respondents on that account."

The case which this court had in mind as the case of a
benefit from the location of a railroad which was special and
peculiar, seems to have been, where a railroad passes through
a lot of land, leaving on one or both sides of it land of the
petitioner fronting on the location and so adapted for the es-
tablishment of a yard or the erection of a building to be used
in connection with a spur track running from the tracks of
the railroad into the yard or building. See in this connection
*New York, New Haven, & Hartford Railroad* v. *Blacker*, 178
Mass. 386. It was there held that the owner of land used for
a lumber yard with a spur track was entitled to recover for
loss of the possibility of using the land in that way under a de-
cree for the abolition of a grade crossing which depressed the
tracks so that a spur track could not be run into the land in
question.

We are of opinion that these decisions should not prevent us

from deciding that the benefit resulting from the station's being immediately opposite the land of the petitioner is the same in kind as (although greater perhaps in degree than) the benefit which results to the neighbors of the petitioner, and therefore cannot be set off against the damages due it as a benefit peculiar to its land.

3. The petitioner was entitled to recover such sum as was reasonably expended by it in caring for the physical injury done to its buildings by the construction of the tunnel. Included in that would be such sum, if any, which was reasonably expended by it in paying a competent person to see to it that proper precautions were taken to make the physical damage as small as was practically possible. Such an expense is an expense limited to the land taken and not consequential damages within the rule of *Edmands* v. *Boston*, 108 Mass. 535, affirmed in *New York, New Haven, & Hartford Railroad* v. *Blacker*, 178 Mass. 386. We are of opinion that the exception to the exclusion of evidence as to the sum paid by the plaintiff to Mr. Adams must be sustained.

4. The question of evidence raised by the exception to the admission in evidence of the number of persons who passed through the station opposite the petitioner's land, without distinguishing between those who left the station and came on to the street and those who passed through it merely, has become immaterial now that it has been decided that no benefit arising from those facts can be set off.

*Exceptions sustained.*