EDWARD F. BAKER *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.     November 21, 1902. — April 1, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Damages. Boston Elevated Railway Company. Words,* "Damages."

Under St. 1894, c. 548, § 8, providing for compensation for damage caused by the construction, maintenance or operation of the lines of the Boston Elevated Railway Company, noise which operating with other causes would constitute a private nuisance to abutting property, if it were not authorized, is special and peculiar damage, for the whole of which compensation can be recovered, without seeking to determine how much of the effect is due to that part of the noise which alone would not constitute a liability and how much to the excess.

KNOWLTON, C. J.  This is a petition under the St. 1894, c. 548, to recover damages to the petitioner's property, caused by the location, construction, maintenance and operation of an elevated railway through Harrison Avenue, a street in Boston, in front of the petitioner's premises.  The questions in the case relate to noise as an element of damage in such cases.  The Chief Justice of the Superior Court, who heard the case without a jury, "found that the noise occasioned by the operation of the respondent's elevated railway was such in origin, character and extent as that but for the statute authority would constitute a private nuisance of a grave character to the petitioner's said estate," and decided that the petitioners were entitled to recover the sum of $2,000 in all as damages, one half of which is for the damage from noise.  The petitioner, Baker, owned the fee of the land to the centre of the street, subject to the rights of the public, but there were restrictions in his deed which limited his occupation and use of a strip ten feet in width along the line of the street.  The width of the street in front of the estate, including the sidewalks, is fifty feet, and the width between the curbstones is about thirty-one feet.  The respondent's structure, the width of which is twenty feet, is substantially in the middle of the street, and the west track, which is five feet in width from rail to rail, is wholly in that part of the street the fee of which is owned by the petitioner.  The land is occupied by a brick building four stories in height, used as a tenement or lodging house.  At the conclusion of the evidence the respondent asked the court to rule as follows :

"First.  As regards damage caused by noise, the plaintiff is entitled only to the difference between the depreciation in the value of his property, which would be caused by the noise if it existed just beyond its confines, and the depreciation which is caused by the noise in its present location.

"Second.  In estimating the damage caused by noise the rule of law is as follows: First, estimate the depreciation in value of the plaintiff's property which would be caused by the noise if it existed just beyond the property confines.  Second, estimate the depreciation which is caused by the noise in its present location.  The plaintiff is entitled to the difference between the two, but to no more.

" Third. As regards the damage caused by the noise, it may be allowed for only in so far as increased proximity, due to the taking, is the source of the trouble.   The difference between the annoyance just outside the petitioner's parcel and the same in its actual location is the measure of damages."

The judge declined to give these rulings, and after finding the facts and assessing the damages, reported the case to this court at the request of the parties, under a stipulation that such judgment shall be entered upon the facts found as the law requires. The judge also found that if damage for noise were to be assessed under the rules stated in the respondent's requests, the amount to be awarded would be only $100.

It would seem as if the trial proceeded upon an assumption by both parties that the petitioner was entitled to recover for noise, and that the only question was how much.   But under the terms of the report the broader question, whether noise can be considered at all as an element of damage, has been much discussed in this court.   We think it pretty plain, for reasons which we shall state hereafter, that the rulings requested were rightly refused, and we shall first consider the broader general question above referred to.

The answer to this depends upon the meaning of the statute under which the petition is brought, material parts of which are as follows: " The location, construction, maintenance or operation of said lines of railway in any public or private way shall be deemed an additional servitude and entitle lessees, mortgagees and other parties having an estate in such way or in premises which abut thereon, and who are damaged by reason of the location, construction, maintenance and operation of said lines of railway, to recover reasonable compensation in the manner herein provided."   St. 1894, c. 548, § 8.   ". . . The finding shall be on the following questions, to wit: First. Has the petitioner's estate been damaged more than it has been benefited or improved in value by reason of the location, construction, maintenance or operation of such railway?   Second. If so, how much ?   If the answer to the first question shall be ' No ', a verdict shall be rendered for the corporation ; otherwise a verdict shall be rendered for the petitioner for the amount found in answer to said second question, including interest from the day of the filing of the petition."   St. 1894, c. 548, § 9.

This statute deals with conditions materially different from those contemplated by any previous statute under which action has been taken in this Commonwealth, and of course it must be interpreted in reference to these conditions. At the same time it belongs to a department of legislation which includes many previous enactments, and which concerns a large part of the fixed property in the Commonwealth. In the absence of plain indications to the contrary, a legislative intention to make it harmonious with existing legislation of the same class may be presumed.

The statement of the questions on which the findings are to be made in a statute of this kind, is a new departure in this Commonwealth, and the broad statement of the benefit or improvement in value which is to be set off against the damage, . suggests the possibility of an intention that everything should be considered causing an increase of value on one side or a diminution in value on the other, and that a balance should be struck showing the resulting effect upon the value of the property, and if the diminution from all causes is greater than the increase, damages should be awarded accordingly. Such a rule would enable a landowner on the street to recover as damages possible elements of diminution in value which might be common to the property throughout a large neighborhood, from causes which might affect all persons in the neighborhood, whether permanently or temporarily there; and on the other hand, it would compel the landowner to set off against his damages elements of enhancement of value which might be common to property owners throughout a large territory, or even to all in the city. It would be unjust to him that he should be compelled to set off such benefits against his claim for damages when others who have no claim for damages receive them without charge, and it would be unjust to the taxpayers or to the private corporation which represents the public, if he should be allowed damages for diminution in value from causes affecting a large part of the public who must endure these effects without compensation. For this reason the word " damage," in statutes of this kind, is held to include only damage that is direct and proximate, as distinguished from that which is remote and consequential, and to include only that which is special and peculiar to the petitioner and to those similarly situated, as distinguished from that which is common,

affecting· generally persons and property in the vicinity. The fact that all precedents would require us to allow only damage of this kind under § 11 of this chapter, and the improbability that two different rules for assessing damage of this kind would be established by the same statute, lead us to interpret the word "damage" in the statutory question as meaning special and peculiar, and not general damage.

But it is to be noticed in passing that the benefits to be set off under this section may include more than can be included in assessing damages for the taking of land for highways or railroads. Increase in value in such cases, may be of three kinds: First, that relating to the particular estate, such as the size or shape in which it is left, or its frontage upon a desirable street. This is always to be set off against the damages in making an award, unless there is to be a subsequent assessment of benefits. Secondly, benefits which are not limited to estates a part of which are taken, but which extend to other estates in the vicinity, materially increasing their value by reason of their proximity to a great public improvement, and which are benefits beyond those shared by the public and by property owners generally. These are subject to assessment under most statutes which provide for an assessment of benefits, but they cannot be set off in assessing damages. Then there is an increase of value from causes which affect the whole community, which possibly raise the market value of all the real estate in a city or town, or in a large part of a city or town, but which have no such relation to the particular territory as specially and peculiarly to affect property there, or properly to constitute a reason for special taxation. The statute before us calls for a set-off of such improvement in value as would be a subject for the assessment of benefits under ordinary statutes calling for such an assessment, as distinguished from the improvement from a more restricted line of causes which alone could be considered on the question of set-off in estimating damages. for the taking of land for a highway or railroad apart from betterment laws, and as distinguished, on the other hand, from the general increase in value of property in the city which is not subject to set-off or assessment under any statute.

In determining the meaning of the statute before us we look at its provisions. It declares that the use of a street for an

elevated railway shall be deemed an additional servitude upon the land. It provides for abutters who do not own land in the street, as well as for persons who own the fee of the street, and in express terms it gives damage for detriment caused by the operation of the railway as well as for that caused by its construction. By its express provisions it precludes the possibility of doubt upon any of these subjects. It is obvious to every one that noise from the almost constant running of the cars is a large element of damage to owners of houses along the street. If, therefore, detriment from noise can be a special and peculiar damage, as distinguished from a general damage to the property, it seems pretty plain that this kind of damage is to be a matter to be compensated under this statute.

In dealing with the question which is presented we have a helpful analogy in the rules of common law. Noise is necessarily incident to the transaction of many kinds of business, and so long as it is not excessive it is not unlawful. But when it is so great as to become a nuisance to property in the vicinity it is actionable. It is judged by its effect, and not merely by its cause. In England the difference in effect between damage which, as between private persons would give a right of action for a nuisance, and that which is permissible in the use of land, is often treated as an important consideration, if not an absolute test, in deciding what shall be paid for by a corporation acting under public authority. *Brand* v. *Hammersmith & City Railway*, L. R. 2 Q. B. 223. *Hammersmith & City Railway* v. *Brand*, L. R. 4 H. L. 171. *Ricket* v. *Metropolitan Railway*, L. R. 2 H. L. 175. Disturbance which constitutes a private nuisance may be treated as causing damage different in kind and not merely in degree from that caused by disturbance which falls short of being a nuisance. Damage from noise which is unlawful by reason of its excess may well be considered unlike the detriment which is so slight as to be legally permissible in the ordinary use of property.

In the case at bar it is found that but for the statutory authority the noise " would constitute a private nuisance of a grave character to the petitioner's said estate." At common law, in such a case, the rights of the owner of the property affected, and his relations to the cause of the disturbance, are treated as very

different from those of the general public who are also affected by it, and he is entitled to compensation in damages. *Wesson* v. *Washburn Iron Co.* 13 Allen, 95. We are of opinion that noise, such as would constitute a private nuisance to abutting property if it were not authorized, should be treated as causing special and peculiar damage under this statute, which entitles the landowner to compensation.

There are decisions in other States which tend to confirm us in our view, but in the main we rest upon the language of the statute, taken in connection with the conditions to which it applies and the character of our previous legislation as construed by this court. It would be contrary to a long line of authorities to hold that under a statute like this, the Legislature intended to authorize the creation of a private nuisance of a grave character without providing compensation for the damage to abutting owners. The decisions in the State of New York were made under laws so different from ours, both in reference to the rights of property in and along streets in the city of New York, and the statutes relating to elevated railways, that they furnish us little aid. *In re New York Elevated Railroad,* 70 N. Y. 327. *Kane* v. *New York Elevated Railroad,* 125 N. Y. 164. *Story* v. *New York Elevated Railroad,* 90 N. Y. 122. *American Bank Note Co.* v. *New York Elevated Railroad,* 129 N. Y. 252. A similar statement might be made in reference to other cases. *Beseman* v. *Pennsylvania Railroad,* 21 Vroom, 235 ; 23 Vroom, 221. *Cleveland & Pittsburgh Railroad* v. *Speer,* 56 Penn. St. 325. *Carroll* v. *Wisconsin Central Co.* 40 Minn. 168. *Scott* v. *St. Paul & Chicago Railway,* 21 Minn. 322. *Hanlin* v. *Chicago & Northwestern Railway,* 61 Wis. 515.

The statute before us gives abutters on streets who have no property in the street, the same right to receive compensation as abutters who are owners of the fee in the street. This fact in itself makes it impossible to apply the rule as to damages stated in the requests for rulings. These requests are founded on the opinions in *Presbrey* v. *Old Colony & Newport Railway,* 103 Mass. 1, and *Walker* v. *Old Colony & Newport Railway,* 103 Mass. 10. The difficulty of applying this rule in proceedings under the Public Statutes was brought to the attention of the court and somewhat considered in *Rand* v. *Boston,* 164 Mass.

354. Under the present statute the difficulty is insurmountable. When the abutters on the line of the street are given damages from the same enumerated causes as the owners of the fee, it cannot be that the damage to an abutter from noise is to be estimated in one way if he happens to own the fee of the street and in a different way if he owns only to the line of it. In the case of a mere abutter there is no opportunity to subtract the damage which would result from noise if the railway were just outside of his property, from the damage from noise by reason of its coming upon his property, for it does not come upon it at all. But if there were no special provision for abutters and the rule were to be considered in reference to the owners of the fee alone its application would work great injustice.

It seems that at the trial no question was raised in regard to any cause of damage except noise. Accordingly the discussion in this court has been confined to this subject; but it appears from the report that there are other causes of damage connected with the maintenance and operation of the railway, which act concurrently with noise to produce the harmful result. Whenever the effect of noise, acting with such causes, is to produce a result like that from a private nuisance, the damages are special and peculiar, for which the abutter has a remedy under the statute. It is not necessary, in assessing damages, to separate the effect produced by noise alone from the effect of other concurring causes.

In reference to the amount to be recovered, the principle on which the statute is founded seems analogous to the common law in regard to noise as a disturbance to neighboring landowners. In actions at law, so long as the noise is not so excessive as to constitute a private nuisance to the neighboring property, it is treated as permissible, and there is no liability for the effect of it. But when it increases so as to become a private nuisance its effect is treated as of a different character, and the party injured by it may recover all the damage caused by the nuisance, without attempting to determine how much of the effect is produced by that part of the noise which might have been innocently made and how much by that part which is in excess of that which is allowable. So under this statute whose language in regard to compensation is very broad, if the effect is such as would constitute a private nuisance in the absence of authority

from the statute, it is treated as of a different character from the effect which would be permissible without statutory authority, and it is considered special and peculiar damage, for which the statute gives compensation, treating it as a unit, without seeking to determine how much of this effect is due to that part of the noise which alone would not create a liability, and how much to the excess which, in connection with the other, makes the condition like that from a private nuisance.

We are of opinion that there was no error in the proceedings at the trial. The entire court agree in the result reached, and a majority agree in the mode of reaching it. A minority of the court think that the finding that the noise would constitute an actionable nuisance if not authorized by the statute is immaterial. *Judgment on the finding.*

The case was argued at the bar in November, 1902, before *Knowlton, Morton, Lathrop, Barker, & Hammond,* JJ., and afterwards was submitted on briefs to all the justices.

*F. N. Nay & W. Bolster,* (*L. M. Abbott* with them,) for the petitioner.

*H. E. Bolles, C. H. Tyler & O. D. Young,* for the trustees of the Boston Real Estate Trust and others, submitted a brief by leave of court.

*W. A. Hayes & H. M. Williams,* for the trustees of the Terminal Hotel Trust and others, also submitted a brief by leave of court.

*H. M. Knowlton,* (*G. C. Travis* with him,) for the respondent.