FRANCIS PEABODY, JR. & others, trustees, *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.   March 13, 14, 1906. — May 16, 1906.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Damages.   Boston Elevated Railway Company.   Elevated Railway.   Evidence.*

Under St. 1894, c. 548, § 8, providing compensation for persons having an estate in premises which abut on a way in which the railway of the Boston Elevated Railway Company is constructed who are damaged by reason of the location, construction, maintenance and operation of that railway, and under § 9 of the same statute providing that the questions shall be " Has the petitioner's estate been damaged more than it has been benefited or improved in value ? " and "If so, how much ? " the railway company, on the trial of such a petition by the owners of a hotel opposite a station of the elevated railway, which is connected on the other side of the street with the South Terminal Station, is entitled to set off against the damages of the petitioners any increase in the market value of the petitioners' property resulting from the location of the respondent's station in front of the premises and the consequent flow of travel to and from that station in so far as people are thereby induced to use the hotel or to advertise the hotel to others, and also any increase in market value resulting from the fact that the respondent's station in front of the premises furnishes the hotel and its patrons quick and convenient transit to the North Station and other parts of the city.

---

On the trial of a petition under St. 1894, c. 548, § 8, by the owners of a hotel on Atlantic Avenue in Boston for damages caused by the construction, main-tenance and operation of the elevated railway of the Boston Elevated Railway Company, which is constructed substantially in the centre of Atlantic Avenue within thirty-two feet of the front of the hotel, its trains passing on a level with the bedroom windows, how far the judge in his discretion should admit evidence as to the percentage of front rooms that could be let before and after the operation of the elevated railway, to show the diminution in value of the petitioner's property for use in the business to which it seemingly is best adapted, *quaere.*

PETITION, filed September 9, 1901, under the provisions of St. 1894, c. 548, and acts in amendment thereof, by the owners of the Hotel Essex on Atlantic Avenue, Essex Street and East Street in Boston, for damages caused by the location, construction, maintenance and operation of the elevated railway of the Boston Elevated Railway Company.

In the Superior Court the case was tried before *Hardy,* J., without a jury.

Among other facts appeared the following:

The work of constructing foundations for the posts opposite this estate was begun on August 25, 1899, and completed on September 13, 1899, upon which date the surface of the street was restored to its former condition. The work upon the super-structure above the surface of the street was begun on April 4, 1901, and was completed with the track system on June 8, 1901. The structure is substantially in the centre of Atlantic Avenue and opposite the hotel is thirty-six feet wide, and the west side is thirty-two feet from the front of the hotel. The station struc-ture and pitched roofs extend along the front of the hotel from the corner of Essex Street ninety feet. The uncovered portion of the station platform runs by the rest of the front of the hotel. The station was completed in June, 1901. The level of the platform is about the same as that of the first bedroom story of the hotel. The top of the platform is twenty-nine feet above the street.

There is an entrance to the South Terminal Station on Atlantic Avenue, nearly opposite but a short distance east of Essex Street. The outward baggage room for all trains in the South Station is on the Atlantic Avenue side opposite the hotel and upon the same side are the rooms for sending express and mail matter. From the train shed of the South

Station a covered passage leads directly by a flight of steps to the elevated station of the defendant, situated opposite the petitioners' hotel.

For the purpose of showing that the elevated railway station is a benefit to the property, sufficient to offset wholly or partially all damages caused by the·elevated railway, the respondent introduced evidence that from August 22 to December 31, 1901, 639,171 persons entered its elevated station opposite the petitioners' hotel from the street and through the covered passage from the South Station. In 1902, 2,487,899 persons entered from the same points. In the year 1903, 3,566,048 persons entered from the same points. In the year 1904, 4,117,971 persons entered from the same points. These figures do not include those persons brought to the station in trains and deposited there; of these the respondent had no record. The evidence did not show how many came from the street and how many through the covered passage from the South Station, but it did appear that the greater number came from the South Station. There also was evidence that the platform of the elevated station extended along the whole Atlantic Avenue front of the Hotel Essex at an elevation about opposite the third story, and that the hotel was conspicuous to the view of any person who entered upon the west side of the elevated station platform and to persons beyond the covered portion on the east side of the platform, and that some part of the hotel was visible from almost every portion of the elevated station platform. There are two entrances to the elevated station from the street. One of these is by a staircase ascending from the east corner of Essex Street, directly opposite and not more than forty-five feet distant from the door of the café of the hotel, and over the staircase the sign "Entrance" is printed in large letters. The other entrance to the station from the street is some fifty feet farther east on the same side of Atlantic Avenue. Both entrances also are exits.

The evidence for the petitioners, referred to in the last paragraph of the opinion, which was admitted by the judge against the objections and exceptions of the respondent, was as follows:

One Lougee, a witness called by the petitioners, was asked,

" How have the front rooms been occupied by patrons of the hotel since the operation of the railway as compared with the occupation before that?" He answered " We find the people will not take our front rooms."

One Smith was asked: " Now you may state what you did notice about the occupation of the rooms and the number of people around, as to whether the business was good or otherwise?" He answered: " Well, I noticed since the house opened that every day it was filled with people and the rooms are — we did not have rooms enough for them, we were sending them away to other places previous to the erection of this elevated road, and since the road commenced to run I have noticed people come down and take as many as ten or twelve in a party away from the house and said that they could not stand the noise, —"

The petitioners called several witnesses who had managed hotels for many years in and about Boston and qualified as experts in the management of hotels, who never had managed the Essex but had examined its location, furnishings and service shortly before the trial. They were not qualified by questions put to them to testify as experts upon the fair market value of real estate and were not asked to testify on that subject. To each of these witnesses the petitioners put the following question: " Supposing the railroad and the station were not there, and there existed only such noises as occurred from the traffic going on there in the absence of the railroad, — I mean the elevated railway, — what percentage, taking it by the year, of the front rooms should you say you think would be let or ought to have been let considering what you have spoken of as a favorable location for the hotel, its character and equipment as you saw it, and assuming also that the hotel is kept in a proper way and with proper service of the guests?" The witnesses severally were permitted to answer the question and gave it as their opinions that from sixty to eighty per cent of the front rooms would be let under the conditions specified. Some of them testified upon cross-examination by the respondent that the hotels with which they were and had been connected as managers rented a larger percentage of their rooms than sixty to eighty per cent.

One Goodwin, also called by the petitioners, testified that he was at the present time and had been since the year 1902 the manager of the Hotel Essex. He was asked by the petitioners what percentage of rooms throughout the whole hotel had been rented since the operation of the elevated railway. He also was asked what percentage of front rooms had been rented in each year since the hotel was opened in May, 1900, and the same question with reference to the percentage of rentals of side and rear rooms during the same period. The witness answered these questions in detail.

At the close of the evidence the petitioners asked the judge to rule as follows :

" The benefits which the respondent is entitled to have offset against the damages sustained by the estate are only such as are special to the petitioners' estate, and not those shared in by the public or the community generally. If the elevated station and railway furnished the patrons of the hotel quick and convenient means of communication to different portions of the city that is not a special benefit which can be set off against damages."

The respondent asked the judge to rule as follows :

" 1. The respondent is entitled to have set off against any damages all special benefit which accrued to the petitioners' property by reason of the location of the elevated railway and station on Atlantic Avenue.

" 2. The benefits to be set off include any increase in the market value resulting from the location of the station in front of the premises, and the consequent flow of travel to and from said station, in so far as people are thereby induced to use said hotel or advertise said hotel to others.

" 3. Benefits to be set off include increase in market value resulting from the fact that the station in front of the premises furnishes the hotel and its patrons quick and convenient transit to the North Station and other parts of the city." .

The judge made the ruling requested by the petitioners and the first ruling requested by the respondent, but refused to make the second and third rulings requested by the respondent.

The judge found that the petitioners were entitled to recover as damages the sum of $120,023.43 ; and the respondent alleged exceptions.

*C. F. Choate, Jr.,* (*C. B. Gleason* with him,) for the respondent.

*J. R. Dunbar,* (*H. M. Williams* with him,) for the petitioners.

KNOWLTON, C. J.   The principal question in this case arises in the application of the law allowing the set-off of benefits in estimating the damages to the petitioners' property from the location, construction, maintenance and operation of the defendant's elevated railway, through the street in front of the petitioners' premises.   The proceedings are under the St. 1894, c. 548, which was considered in *Baker* v. *Boston Elevated Railway,* 183 Mass. 178.   In construing this statute it seemed to the court that, while the Legislature was dealing with peculiar conditions, it must be presumed to have intended to make the statute harmonize, as nearly as possible, with other parts of our system relative to the assessment of damages to private property caused by similar public improvements.   In reference to the construction of such a work as an elevated railway through the public streets, it is difficult, if not impossible, to establish a general rule that will operate with perfect equality upon all landholders affected by it.   This statute gives damages for construction in the public ways only to " parties who have an estate in the way, or in premises which abut thereon."   Other parties, owning property near the corners of streets crossed by the railway, may suffer similar damages, less in degree, for which the statute gives no compensation.   An owner on the street through which the elevated way is constructed is allowed damage only to the amount that his estate has been " damaged more than it has been benefited or improved in value."   St. 1894, c. 548, § 9.   In setting off benefits in the assessment of damages to landowners whose property is taken or injured by laying out a highway, only such benefits are included as are special and peculiar to such property, as distinguished from those which are received by estates generally in the vicinity.   *Parks* v. *Hampden,* 120 Mass. 395.   *Hilbourne* v. *Suffolk,* 120 Mass. 393.   *Cross* v. *Plymouth,* 125 Mass. 557.   *Smith* v. *Boston,* 7 Cush. 254.   One reason for this rule is that it would be unfair to compel parties who suffer damage to pay for benefits, by a diminution of the amount fairly due them as compensation, when others in the neighborhood who have no claim for damages receive the same

benefits without paying for them. With possible, but rare, exceptions (see statements in *Hilbourne* v. *Suffolk*, 120 Mass. 393, 395, and in *Abbott* v. *Cottage City*, 143 Mass. 521, 526); this rule works equitably in this particular.

But in the assessment of benefits for special taxation, under most betterment laws, a different standard is established. A set-off may be made of any benefit or advantage "beyond the general advantage to all land in the city or town." R. L. c. 50, § 1. In determining whether there is a special benefit to an estate under this statute, the comparison is not with other estates in the neighborhood, but with the land generally in the city or town, and the inquiry is whether the estate has received a benefit or advantage beyond the advantage to real estate generally in the city or town. This difference between special benefits which may be set off in a suit for the assessment of damages and those which may be made the subject of assessment under betterment acts has repeatedly been recognized by the court. *Upham* v. *Worcester*, 113 Mass. 97. *Benton* v. *Brookline*, 151 Mass. 250, 260, 262. *Atkinson* v. *Newton*, 169 Mass. 240, 242, 243. *Sears* v. *Street Commissioners*, 180 Mass. 274, 280, 281. *Baker* v. *Boston Elevated Railway*, 183 Mass. 178, 182.

It is decided that the difference between the detriment from the discontinuance of a way, which affects the public generally, and therefore must be borne by all alike, and special damage which will entitle the sufferer to compensation, is not merely a difference in degree, but a difference in kind. *Davis* v. *County Commissioners*, 153 Mass. 218. *Hammond* v. *County Commissioners*, 154 Mass. 509. A similar rule has been stated in some other classes of cases. In a sense, this truly marks the difference between a general advantage which cannot be set off and a special advantage for which allowance must be made. But between the "general advantage to all the land in the city or town," which cannot be made the subject of a special assessment, and the benefit or advantage beyond this, which can be made the subject of a betterment tax, the only necessary difference in kind is in the advantage affecting value referred to in the statute. Under this statute the test involves a consideration of every kind of benefit or advantage which enters into the

value, and it makes the decision turn on whether this advantage is beyond that received generally in the city or town. In deciding whether a benefit is special and peculiar, under the betterment acts, proximity as an element of value is often the determining fact. While frequently there are marked differences between assessable and non-assessable property in the kind of benefit received, sometimes the only differences justifying an assessment are those affecting a large neighborhood assessed, in which the land of the city or town generally shares in some slight degree. While this has not been the subject of express adjudication, it is illustrated in the facts of many cases. It is well illustrated by the assessment which appears in *Sears* v. *Street Commissioners*, 180 Mass. 274. If the benefit is large enough the property comes within one class; if it is not it is left in the other class. Upon the kindred subject of damages see *Baker* v. *Boston Elevated Railway*, 183 Mass. 178, 183.

The petitioners rely upon *Lincoln* v. *Street Commissioners*, 176 Mass. 210. The decision of that case rests upon the principle that, if the benefits to the other estates were assessable, the remedy of the petitioner was not by a' writ of *certiorari*, but by an application for a jury. See the discussion and cases cited on page 215. See also *Jones* v. *Aldermen of Boston*, 104 Mass. 461, 469. The discussion in the cases cited on page 213 refers to the set-off of benefits in suits for the assessment of damages, and not to benefits which may be assessed under betterment laws.

As the statute before us in § 9 contains broad language in reference to the benefit or improvement " in value " that may be set off, it seems reasonable that owners of land in the street, and abutters upon it, who alone are permitted to recover damages, and who are allowed compensation for everything that ever is paid for in such cases, should be obliged to set off all benefits that might be the subject of an assessment of betterments if the street railway were a public improvement erected under a statute at the city's expense. This gives effect to the language of the. statute by applying the same rule both to damages and benefits, including in each class everything except that which is suffered or received by property generally throughout the city.

We do not think that the different rule, provided by § 11 of

the statute for the assessment of damages for taking private land outside of ways, is of much significance as an argument against this rule.   Very little land was so taken, and the effect of the taking upon owners was very different from that of the construction of a railway in the public streets.   Accordingly, in *Baker* v. *Boston Elevated Railway, ubi supra,* at page 182, this rule was stated for the guidance of the courts.

If some of the benefits which the respondent seeks to set off result from the easy and rapid transit furnished by the respondent's railway to occupants of the petitioners' hotel, the mere fact that the general public receive similar advantages does not make them less a matter of set-off, if the petitioners' property receives from them a benefit or advantage beyond the general advantage to all the land in the city.   We are of opinion that the respondent's second and third requests for rulings should have been given.

The testimony which was admitted, subject to the respondent's exception, relates to the effect of the railway upon the property, in reference to one of the uses to which it is adapted, and seemingly the use to which it is best adapted.   Of course the evidence was not competent for the purpose of showing damage to the business conducted there, but only to show the diminution in value of the property for use in that business. *New York, New Haven, & Hartford Railroad* v. *Blacker,* 178 Mass. 386.   In this view, the chief objection to the evidence is that, to make it of value, numerous collateral issues needed to be determined.   Because of the difficulty of determining some of these, and especially because some of them depended for their determination upon the testimony of experts, whose opinions were, at the best, of very uncertain value as applied to this case, much of this evidence well might have been excluded, in the discretion of the court.   On the other hand, as to the greater part of it we are not prepared to say that there was error of law in receiving it.   See *Cochrane* v. *Commonwealth,* 175 Mass. 299.

*Exceptions sustained.*