CHARLES B. LENTELL *vs.* BOSTON AND WORCESTER STREET RAILWAY COMPANY.

Middlesex.  March 2, 1909. — May 20, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Damages,* For property taken or injured under statutory authority.  *Way,* Extent of public easement.  *Elevated Railway.*

Upon a petition for the assessment of damages under St. 1903, c. 163, § 3, for injury to the petitioner's dwelling houses on Boylston Street in Newton by the trestle constructed, and used during a certain period, by the Boston and Worcester Street Railway Company over and across the tracks of the Boston and Albany Railroad on that street under the authority given by § 1 of the same chapter, it appeared that the trestle was a structure of timber twenty feet high and was erected in the middle of the street in front of the petitioner's houses, and that the effect of its construction and operation was very similar to that produced by the construction and operation of an elevated railway in a large city, and there were facts which warranted a finding that the trestle, if its construction had not been authorized by the statute, would have been a private nuisance of a grave character to the petitioner's property, and that its maintenance, in the absence of such authority, would have been a use of the street which would have been unreasonable under the general taking.  *Held,* that upon such a finding the right to construct and use the trestle could not be included in the easement acquired by the public when the street was laid out, and that under St. 1903, c. 163, there would be a taking of the petitioner's property by right of eminent domain, which would make him a person "legally damaged in his property by the construction, maintenance or use of the said trestle" under § 3 of that statute.  *Held, also,* that the fact that the damage was not permanent did not affect the petitioner's right to recover compensation for that which he had suffered.

KNOWLTON, C. J.  This is a petition for the assessment of damages under the St. of 1903, c. 163,* for the erection and maintenance of a trestle on Boylston Street in the city of Newton, in front of the petitioner's premises.  It was agreed that, if the judge † was of opinion that the petition could be maintained on the agreed facts and the testimony, he might order a formal verdict for the petitioner for $500.  The judge ruled that the facts and evidence would warrant this verdict, and he directed the jury to return it accordingly, reporting the case for our determination.  The question before us is whether this ruling was right.

This trestle was to carry the street railway over the tracks of the Boston and Albany Railroad.  The petitioner owned two houses opposite the trestle, one occupied by himself and the other by a tenant.  The trestle was a structure of timber, very similar to a coal trestle used for coal cars.  It was constructed in the middle of the street, and it started east of the plaintiff's property at the grade of the street, and rose gradually as it went west until it got to a height above the railroad of twenty feet to the top of a board fence, built along on either side of it to a height four feet above the ties on which the rails were laid.  In front of the plaintiff's house it was twelve feet to the top of the board fence.  Although there was a plank on top upon which one could walk, the public were prohibited from walking on it.  There were bents, or upright posts, on which the stringers were laid, and there were braces placed in such a way that no vehicles could pass through.  It was fifteen feet wide at the base and twelve feet at the top.  There were two tracks over it, but they were placed in such a way that the outward and inward bound cars, which used different tracks, could not pass on the trestle at the same time while going in opposite

---

* Section 3 of that statute is as follows : " The construction, maintenance and use of the said trestle shall be deemed not to be an additional easement or servitude.  If any person is legally damaged in his property by the construction, maintenance or use of ʼthe said trestle the damages may be assessed by a jury of the Superior Court upon proceedings conducted as provided with respect to the laying out of ways in the city of Newton."

This section was held to be constitutional in a suit in equity between the same parties in an opinion reported in 187 Mass. 445.

† *Stevens,* J.

directions.  The cars in use were large, heavy electric cars.
The total length of the trestle on both sides of the steam rail-
road was about six hundred feet, and the evidence tended to
show that it was a great source of inconvenience and annoyance
to the petitioner and his family in the use of his premises.  It
obstructed their view and the free entrance to their house from
the front, and it obstructed the light and air.  While it was
being constructed the street between the plaintiff's house and
the trestle was completely blocked with timber, so that horses
and carriages could not get to the house, and so long as the
trestle remained, it was not safe to hitch horses or leave horses
in front of the house, on account of the noise of the cars over-
head.  There were search lights on the cars at night, which
would make the rooms as light as day, and interfere with
persons trying to sleep.  Before the trestle was built the lights
were too low to illuminate these rooms.  Boylston Street was
constructed at this point with a reserve space in the middle,
between two driveways, one on the northerly and the other
on the southerly side of the street.  The railway tracks and
the trestle were constructed in this reserved space, and, after
the construction of the trestle, it was impossible for a team
to pass from the south roadway to the north roadway near the
petitioner's house.  The cars ran very fast over the trestle.
When going up the trestle they seemed to be moving as fast
as possible when their speed was fifteen or eighteen miles an
hour.  In going down the trestle they sometimes went as fast
as twenty-five to thirty miles an hour.  They made a great
noise, and when going down the trestle the gong was clanged
to warn travellers.  The disturbance was such that it was
almost impossible to get sleep in the petitioner's house before
eleven or twelve o'clock at night.

Proceedings were begun in 1900 for a separation of the grades
of the Boston and Albany Railroad and the street, and the work
whereby this grade crossing was abolished was completed in
August, 1906.  The trestle was taken down and removed in
July, 1908.

The effect of the St. 1903, c. 163, as it was construed in *Len-
tell* v. *Boston & Worcester Street Railway,* 187 Mass. 445, was to
leave the railway company liable to pay damages for the con-

struction, maintenance and use of this trestle, if the street was thereby put to a use beyond that which was paid for under the general law, when the street was originally laid out. The declaration in § 3, that this should be deemed not to be an additional easement or servitude, was coupled with a provision for compensation to any person legally damaged in his property by the construction, maintenance or use of the trestle. This was equivalent to a statement that the Legislature did not assume to determine finally whether the street could be put to such a use without compensation to abutters.

The trestle, in its effect upon the street at this point, and upon the plaintiff's houses, was very similar to the elevated railways which have been built in large cities in recent years. In its effect upon the use of the street by travellers with horses, it was, in some respects, far more detrimental than an elevated railway in a crowded city, partly because the sights and sounds from cars of elevated railways in large cities are mingled with many other disturbing sights and sounds which make them less noticed by horses than would otherwise happen, and partly because the horses used in crowded parts of cities are accustomed to a great variety of disturbing conditions, while horses in suburban and rural regions are not familiar with such terrifying disturbances. By the St. 1894, c. 548, § 8, the elevated railway in Boston was declared to impose an additional servitude upon land taken for, public streets, and a provision was made for the payment of damages accordingly. *Baker* v. *Boston Elevated Railway*, 183 Mass. 178.

The law in this Commonwealth is exceedingly liberal to the public, in its interpretation of the provisions under which streets and highways are laid out. The public easement acquired under such statutes " is held to include every kind of travel and communication for the movement or transportation of persons or property which is reasonable and proper in the use of a public street." *New England Telephone & Telegraph Co.* v. *Boston Terminal Co.* 182 Mass. 397, 399. The doctrine has been stated and elaborated in many other cases. *White* v. *Blanchard Brothers Granite Co.* 178 Mass. 363. *Eustis* v. *Milton Street Railway*, 183 Mass. 586. *Howe* v. *West End Street Railway*, 167 Mass. 46. *Pierce* v. *Drew*, 136 Mass. 75. But the uses

that may be made in the public interest, under a taking for a street, are limited by the decisions to those which are reasonable. In determining what is reasonable, not only the rights of the public as users of the streets in different ways are to be considered, but the rights of abutters as property owners along the line of the street are to be taken into account. When this is not definitely expressed in the cases, it is implied. In *Sears* v. *Crocker*, 184 Mass. 586, 588, it is definitely expressed as follows : "The public rights in these lands are plainly paramount, and they include, as they ought to include, the power to appropriate the streets above or below the surface as well as upon it, in any way that is not unreasonable, in reference either to the acts of all who have occasion to travel or to the effect upon the property of abutters." In the laying out of streets under our general laws, while it has been assumed that they may be used in a variety of ways, for travel, transportation, transmission and communication, it has not been assumed that they can be put to uses that would throw a very great burden upon adjacent proprietors in the occupation or use of other property. The easement acquired by the public is only for uses that are reasonable in reference to their effect upon adjacent property, as well as their effect upon other kinds of public uses of the street. A use of the street which would constitute a grave private nuisance to property at the side of the street could not have been contemplated by the law as being acquired by a taking for a highway or street. As was pointed out in *Baker* v. *Boston Elevated Railway*, 183 Mass. 178, 183, the difference between disturbance which would constitute a nuisance as between private owners and that which would not has been treated by the courts of England as an important consideration, if not an absolute test, in deciding what shall be paid for by the corporation, acting under public authority. It is true that, in the exercise of the police power, the Legislature may authorize or limit the use of property within certain bounds, thus changing, to a certain extent, the law of nuisance, without taking property under the right of eminent domain. *Sawyer* v. *Davis*, 136 Mass. 239.

In the city of New York the streets are held by the government in fee as property, subject to a trust that they shall not be put to a use which is inconsistent with their use as streets, or

destructive of the object for which they are held. It has been decided repeatedly that to permit the construction of an elevated railway in these streets by a private corporation, without compensation to the abutters, is a violation of this trust, and a taking of an easement belonging to them. *Story* v. *New York Elevated Railway*, 90 N. Y. 122. *Lahr* v. *Metropolitan Elevated Railway*, 104 N. Y. 268. *Kane* v. *New York Elevated Railway*, 125 N. Y. 164. *Lewis* v. *New York & Harlem Railroad*, 162 N. Y. 202. *Muhlker* v. *New York & Harlem Railroad*, 197 U. S. 544. The cases in which it is held that, under the law of New York, there is a difference between the rights of the public authorities to construct an elevated viaduct for general travel and the right of a corporation to construct an elevated railway for the convenience of passengers, under legislative permission, does not affect the authority of the cases above cited, as bearing upon the construction of elevated railways by railway corporations in this Commonwealth. See *Sauer* v. *New York*, 206 U. S. 536.

Upon the question whether an additional servitude is imposed, courts very generally have recognized a distinction between elevated railways and other uses of streets for travel. *Jones* v. *Erie & Wyoming Valley Railroad*, 151 Penn. St. 30. *Willamette Iron Works* v. *Oregon Railway*, 26 Ore. 224. *State* v. *Superior Court*, 26 Wash. 278. *Dairy* v. *Iowa Central Railway*, 113 Iowa, 716. *Farrar* v. *Midland Electric Railway*, 101 Mo. App. 140. *De Geofroy* v. *Merchants Bridge Terminal Railway*, 179 Mo. 698. *Barnett* v. *Johnson*, 2 McCarter, 481.

We are of opinion that there were facts before the judge in the present case, which would warrant a finding that the trestle would have been a private nuisance of a grave character to the petitioner's estate, if it had not been authorized by the Legislature, and that its maintenance was a use of the street which would have been unreasonable, under the general taking, in the absence of statutory authority to provide for new and peculiar conditions. Upon such a finding, the right to construct and use the trestle would not be included in the easement acquired by the public when the street was laid out, and under the statute before us there would be a taking of the petitioner's property by right of eminent domain.

The fact that the damage was not permanent does not affect

the petitioner's right to recover compensation for that which he suffered. *Putnam* v. *Boston & Providence Railroad*, 182 Mass. 351. *Bailey* v. *Boston & Providence Railroad*, 182 Mass. 537. *McKeon* v. *New York, New Haven, & Hartford Railroad*, 75 Conn. 343. *St. Louis, Jerseyville & Springfield Railroad* v. *Kirby*, 104 Ill. 345.

*Judgment on the verdict.*

*W. D. Turner*, (*S. S. FitzGerald* with him,) for the petitioner.
*G. W. Cox*, (*J. F. Bacon* with him,) for the respondent.