### ARGUED AND DETERMINED

#### IN THE

# SUPREME JUDICIAL COURT

##### OF

# MASSACHUSETTS.

---

FREDERICK S. HALL *vs.* COMMONWEALTH.

Bristol. October 27, 1919. — February 3, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Damages,* For property taken or damaged under statutory authority. *Practice, Civil,* Exceptions, Conduct of trial: judge's charge.

At the hearing of a petition for the assessment of damages resulting from the taking of a portion of a farm of the petitioner for the construction of a State highway, it appeared that the land taken had abutted on a dirt road or highway and that the newly constructed State highway was a "cement road," which, by being more direct, made the distance to a nearby village a thousand feet less. The petitioner asked for a ruling that there was no evidence of any benefit which could be set off in damages against the petitioner. The ruling was refused. *Held,* that the frontage on a better and more desirable road and the more convenient access to the village were elements of benefit which were direct and special and could be set off in damages against the petitioner, even if all the real estate in the vicinity which abutted on the new highway was benefited similarly.

If from a bill of exceptions it appears that a judge in his charge did not give in terms a ruling requested by the excepting party, which was a correct statement of the law and was applicable to the circumstances of the case on trial, and that the party asking for the ruling neither excepted to the failure to give the ruling in terms nor called the judge's attention to contentions of his that the principle of law stated in the ruling was not made sufficiently clear by the charge and that the ruling should have been given, the record shows no ground for this court to consider such contentions.

The use, by a judge in his charge at the trial of a petition for damages resulting from a taking of land for the construction of a State highway, of the word "all," modifying the word "estates" in some passages in a long charge defining what were benefits resulting to estates generally in the neighborhood from the construction of the highway, when the charge was read as a whole was *held* to have been sufficiently accurate.

At the trial of the petition above described, the judge submitted five special questions to the jury in an endeavor to determine the damage to the petitioner, the special benefit which resulted to him from the construction of the highway and the benefit which resulted to him in common with others generally in the neighborhood. One of such questions was as follows: "Did the building and maintenance of the road confer upon the estates in the neighborhood generally a benefit or benefits of a sort common to them all?" *Held,* that the question was appropriately expressed and that the use of the word "all" was not erroneous.

PETITION, filed in the Superior Court on September 1, 1917, for the assessment of damages resulting from a taking of land for the construction of a State highway from the town of Norton to the city of Taunton under the authority of St. 1915, c. 230.

This petition and a petition by one Scott and two other petitions brought by owners of other land taken for the same purpose were tried together before *Hammond*, J. Material evidence is described in the opinion. The jury took a view.

At the close of the evidence, the petitioner asked for the following rulings:

"1. On all the evidence, there is no evidence of any benefit which can be set off in damages against this petitioner.

"2. In setting off benefits in the assessment of damages to landowners whose property is taken or injured by laying out of a highway, only such benefits are included as are special and peculiar to such property, as distinguished from those which are received from estates generally in the vicinity."

The first ruling asked for was refused. The judge submitted to the jury special questions, which, with the answers thereto, were as follows:

"1. What was the fair market value of the entire Frederick S. Hall property immediately before May 23, 1916, the date when the highway commission made the taking?" Answer: "$250."

"2. What was the fair market value of the entire Frederick S. Hall property immediately after the taking considering such property in the light of the condition in which it was actually left after the road was completed?" Answer: "$300."

"3. Did the building and maintenance of the road confer upon the estates in the neighborhood generally a benefit or benefits of a sort common to them all?" Answer: "Yes."

"4. How much, if any, did such kind of benefit or benefits add to the value of the Frederick S. Hall property?" Answer: "$50."

"5. What, if any, are the petitioner's damages? [Note: Subtract the answer to question (4) from the answer to question (2), and then subtract the sum so obtained from the answer to question (1). The sum then remaining, if any, answers this question (5)]." Answer: "None."

Material portions of the charge of the judge to the jury were as follows:

"I will deal with the case of Mr. Scott, and it may be a typical case, for the same question will apply to all; and we will deal with these special features of the other cases later. . . . I have told you that a man is entitled when his land is taken to such damages, if any, as will make him just as rich as and no richer than he was before, and I have said to you that that statement is subject to some qualifications. It is, and I will try to explain it to you, although it is a very difficult thing to explain not only to juries but sometimes to lawyers. Suppose a man should live just off this main road, one hundred feet on a side road, and suppose none of his land was taken at all, and suppose that the only means of travel that he had to get to Norton before the highway commission came along was an old dirt road, — I am not trying to describe what was there before but I am just making a supposition — an old dirt road, it was full of mud holes, very inconvenient, and very circuitous, taking a long time to get there. And then suppose that the public authorities should come along and take that road over and build a fine wide boulevard — I am not trying to describe the boulevard that is there but I am making that same assumption — and suppose they make it very straight so instead of having to go around a long hill three or four miles he goes right straight to the town where he can carry his products and do his marketing, and it is a great convenience to him to have a fine road to travel over in that way. It is such a great convenience that it actually affects and enhances the value of his land, and it is such a great convenience that everybody else in that vicinity who has occasion to travel, and most people do, derive the same advantage from it, so

that it is a kind of benefit, — that is, the benefit of having a fine road to travel on, a straight road to travel on, and a short road to travel on is a great benefit, and affects the actual values of all property in that vicinity, and yet nobody, or only a few have had any land taken from them. There you will see that everybody in the community in such a case as that gets something added to the value of his land, and he is entitled to it. Sometimes under what is called the betterment acts those benefits may be assessed upon the landowner, and he may have to pay for them, but in this case which is not under any betterment act the people in the vicinity of this property that I am assuming, I am not talking about this present property, the people in the vicinity of this imaginary property would get a benefit, and a money benefit that would go to enhance the value of their property, and they would be entitled to it, and it cannot be taken away from them under this act. So that if you should apply this rule that I have given to you, the difference between the fair market value before and the fair market value after, the fellow who had his property taken would be just as rich and no richer than he was before, but his neighbors who hadn't had their property taken might be a little richer because of that benefit which he too may have shared in. So you see that it isn't quite fair to say that the only damages to which a man in conditions like that is entitled is the difference between the fair market value before and the fair market value after. . . . You have got to decide the question whether the building of this road, the building and maintenance of this particular road conferred upon all the estates in the neighborhood generally a benefit or benefits of a character which was common to all.

"The inquiry that you have to make is, what kind of benefits were conferred by the building of that road upon the estates generally in that neighborhood, and did such benefits enhance the value of those estates, including this one? Let me give you an illustration of what I mean. I will use the same illustration as I used before. Suppose a State highway is laid out, and it is a better road, the jury thinks it is a better road, a shorter road than the other, an easier road to travel, a more advantageous road, and suppose the jury thinks that the benefits derived from having such a road to travel on, to go to Norton or elsewhere on is a benefit which Mr. Scott in common with all the other proprietors

of estates in the neighborhood share, and suppose they think that element, that that advantage, that that benefit enhanced property, the property in the vicinity, in the neighborhood generally, including Mr. Scott. Then suppose they think it enhanced it a certain amount of money for Mr. Scott. Then if the jury give to him such a sum, or allow to him in the assessment of damages such a sum as would represent that enhancement, he is as well off as anybody else because he gets credit for it. That is to say, he gets credit for such enhanced value of the property as it is completed, as it is left when the road is completed, as the jury may find grows out of the benefit which is shared in common by all of the estates in the neighborhood. That is to say, a right to use a road as a public road; everybody can use a road. If the people in that vicinity by reason of that right, increased public convenience, get a benefit to their estates from that element, then you are to determine how much, if any, such an element or benefit as that, such an advantage, enhancement, added to the value of Mr. Scott's place after the taking. So that your third question is, did the building and maintenance of the road confer upon all the estates in the neighborhood generally a benefit or benefits of a sort common to them all?

"Fourth question, how much, if any, did such kind of benefit or benefits add to the value of the Scott property?

"Now the kind of benefits which you are to take into consideration in these questions are common or general benefits, shared in in common, if you find such to exist, by all the estates in the neighborhood. They are not the kind of benefits which are special to Mr. Scott alone, or any particular class of people in the neighborhood like the abutters on the road. For example, if you find that Mr. Scott's estate after the taking was enhanced in value: that there was an addition to that value by reason of a special and peculiar benefit which Mr. Scott enjoyed, and others in the neighborhood generally didn't enjoy, then he is not entitled to credit for that, and you are not to take that kind of a benefit into consideration in answering the third and fourth questions.

"Let me put you an illustration of what sort of a benefit such a peculiar and special benefit would be. If because the road ran by Mr. Scott's place and he abutted on it, and the road was a better and broader and more desirable road to front upon, and if because he was left by the highway commission fronting on a better and

a more desirable road, his property was therefore enhanced in value by that reason, that would be a special benefit which was not shared in common by all the other estates in the neighborhood. It might be shared in common by other estates that fronted on that road, and indeed it would be, because if it was an advantage for one to be fronting on a better and more desirable street it would be an advantage to another. The reason why it is an advantage is because a man is fronting on the street, and people who don't front on the street couldn't get that kind of an advantage because admittedly it is the kind of advantage that comes from fronting on a street, and it would be a special and peculiar advantage to Scott even if it was shared in by other people who fronted on the street, and it would be different from a general advantage such as I have spoken of a few minutes ago, because other people, all the people in the vicinity wouldn't have that kind of an advantage. They wouldn't be fronting on the street, and they wouldn't be left fronting on the street.

"Now for an advantage of that sort, special and peculiar advantage, Mr. Scott and the others here would not be entitled to any credit. They get that advantage by the layout of the highway and the position of their estates upon the street, and that advantage they are not entitled to credit on. The only advantages they are entitled to take and retain and keep are benefits and advantages of the kind, of the character such as I have described, that is, additional, more convenient use of the road which all people or estates in that vicinity share.

"Now your last question is, what, if any, are the petitioner's damages? I mean by that to sum up the amount, if any, which the petitioner is entitled to recover, and I have appended this so you may know what that means, how to arrive at it. Having answered these previous questions you arrive at five merely by a mathematical calculation of the petitioner's damages. You may have to study this a little but I have given you the formula for it. Subtract the answer to 'four,' that is, what is the amount of the added value, if any, due to general benefits, subtract that answer from the answer to 'two,' which is, what was the fair market value of the property after the taking, and when you have subtracted that take the sum so obtained, and subtract that from the answer to one, which is, what is the fair market value, what was the fair

market value immediately before the taking, and the sum then remaining, if any, answers that question.

"I will give you an illustration of it, and use figures which nobody would claim had any relation to the particular facts of this case. Suppose, for example, you should find that the Scott property was worth $50,000 immediately before the taking, and suppose that you should find that immediately after the taking it was worth $55,000, that is, $5,000 more, and suppose that you should find that there was a benefit or an advantage to all the estates in the neighborhood, shared by all of them, due to this road, which increased, or affected, or added to the value of Mr. Scott's property after the taking to the extent of $2,000. You would substract the $2,000, the value of that enhancement, from the $5,500, [$55,000] the value of the property after the taking, and that would leave you $5,300, [$53,000] and then you would subtract the $5,300 [$53,000] from the $50,000. Now obviously you can't do that. You can't subtract a larger sum from a smaller, and the result would therefore be that the petitioner would not be entitled to any damages at all.

"Now as I understand the theory of the respondent, that figure, that sum that I have done illustrates the contention that they make in this case, and that is for you to decide. The contention of the Commonwealth is that the property was worth more after the taking than it was before, and that it was worth so much more that even if you credit to the owner this item that corresponds to the $2,000 which I mentioned, that is the enhanced value due to the general benefit, it still would result in this, that the value of the property after the taking, even with that deduction, was worth more than the value of the property before, and if you should be of that opinion you should bring in a verdict of no damages for the petitioner. If, however, you should be of the opinion that the value of the property after the taking, reduced by this figure corresponding to the $2,000, that is the added value due to this general benefit, if you find such was less than the value before then the difference is the petitioner's damages, and that is what is meant by the formula in the note appended to the last question. I think if you study that you will see what I mean. If you find also, it is fair to say, if you find that the value of the property after the taking diminished by this item which I spoke of as $2,000, that is

the amount of the enhanced value due to the general benefit, if you find that the value diminished in that way is exactly equal to the value as it was before then the petitioner would not be entitled to any damages. He would be just as well off as he was before, and he would have a credit for this benefit which is shared in by everybody."

At the close of the charge, the petitioner excepted "to the word 'all' as it appears in the third question at the end. Also to the use of the word 'all' in the charge in the test of general benefits, as I claim that the test is the benefit to the estates generally in the neighborhood and not to all estates in the neighborhood."

The jury returned the answers to the special questions as above stated and found generally for the respondent. The petitioner alleged exceptions to the use of the word "all," as above stated, in the third question and in the charge, and to the refusal to give the first ruling asked for by him.

The case was submitted on briefs.

*S. P. Hall,* for the petitioner.

*E. S. White & A. R. White,* for the Commonwealth.

BRALEY, J. The respondent, acting under St. 1915, c. 230, laid out and partially built a State highway in accordance with a plan duly filed in the registry of deeds, and, a strip of the petitioner's land "about five hundred and fifty . . . feet long and eight or nine feet wide, with a stone wall running the whole length of it" on the westerly side of the highway having been taken, the present petition is brought for damages under the provisions of R. L. c. 48. The parcel formed part of a vacant tract used for farming purposes which abutted on a dirt road or highway, and the record states that not only was the new highway a "cement road," but the highway "left the old road" at a point half way between the petitioner's land and "Norton Center . . . saving about one thousand feet for any one who travelled, from the vicinity of the land taken to Norton Center."

The petitioner asked the judge to rule, "On all the evidence, there is no evidence of any benefit which can be set off in damages against this petitioner." The request could not have been given. The jury could find on the evidence, which included a view, that the new highway afforded more convenient access to, and conferred a frontage on a much better and more desirable road. R. L.

c. 48, § 15. It is settled that benefits of this character are direct and special even if all the estates in the vicinity abutting on the street are similarly benefited. *Whitney* v. *Boston,* 98 Mass. 312, 314–316. *Allen* v. *Charlestown,* 109 Mass. 243, 246. *Hilbourne* v. *County of Suffolk,* 120 Mass. 393, 395. *Peabody* v. *Boston Elevated Railway,* 191 Mass. 513. The benefit which cannot be set off is confined to "that which comes from sharing in the common advantage and convenience of increased public facilities, and the general advance in value of real estate in the vicinity by reason thereof." Wells, J., in *Allen* v. *Charlestown,* just cited. The petitioner also asked for a ruling, that "In setting off benefits in the assessment of damages to landowners whose property is taken or injured by laying out a highway, only such benefits are included as are special and peculiar to such property, as distinguished from those which are received from estates generally in the vicinity," which is taken substantially from *Peabody* v. *Boston Elevated Railway, ubi supra.* But no exception was taken to the omission to grant this request. If, as now pressed in argument, counsel were of opinion that although he used the definition requested, yet the judge had failed to make sufficiently clear the difference between general and special benefits, he should have called attention to the matter, and excepted to the instructions if he deemed them not in accordance with the request. *Conners Brothers Co.* v. *Sullivan,* 220 Mass. 600.

The exceptions saved at the close of the charge in so far as applicable to the present case recite, "I except to the word 'all' as it appears in the third question at the end. Also to the use of the word 'all' in the charge in the test of general benefits, as I claim that the test is the benefit to the estates generally in the neighborhood and not to all estates in the neighborhood." While the judge in his endeavor to make clear a distinction which can be legally formulated with precision although not always easy of application by a jury in the particular case, may have discussed and illustrated the questions of general and special benefits at some length, the use of the word "all," when the charge is read as delivered, was sufficiently accurate. *Hilbourne* v. *County of Suffolk,* 120 Mass. 393, 394. *Parks* v. *County of Hampden,* 120 Mass. 395, 396.

The remaining exception is confined to the phraseology of the

third question, which with the answer reads as follows: "Did the building and maintenance of the road confer upon the estates in the neighborhood generally a benefit or benefits of a sort common to them all?" The jury answer: "Yes." The question is appropriately expressed. The use of the word "all" at the end merely emphasizes the inquiry which in effect was whether the benefit was a benefit common to all the neighborhood. *Fifty Associates* v. *Boston,* 201 Mass. 585, 591, 592.

It is urged that the petitioner on the entire record is entitled to recover and that there was a mistrial, but, without intimating any opinion, we cannot consider questions apparently not raised at the trial, and the exceptions must be overruled.

*So ordered.*