Strafford,
No. 5881.

KENNETH Q. PADDOCK & a.

v.

DURHAM.

January 30, 1970.

*Ovila J. Gregoire* and *Upton, Sanders & Upton* ( *Mr. Frederic K. Upton* orally ), for the plaintiffs.

*Michael & Wallace* and *Arthur W. Hoover* ( *Mr. Hoover* orally ), for the defendant.

DUNCAN, J. This is an appeal by the defendant from the assessment of damages for the taking by eminent domain of easements in the plaintiffs' land in Durham on August 30, 1965, for the purpose of constructing a sewer line. RSA 252:5; RSA 234:24. Trial was by jury before *Grant*, J. A verdict was returned in the sum of $6,000. Questions of law presented by the defendant's exceptions were reserved and transferred to this court by the Presiding Justice.

The plaintiffs' property, lying south of Route 4 in Durham, consists of a three-acre tract situated on a promontory at the confluence of Beard's Creek and the Oyster River. The plaintiffs acquired it in 1961, and thereafter erected on high ground at the center of the tract a substantial two-story dwelling with attached two-car garage. An artesian well and two septic tanks, with appurtenant leaching fields, were also installed. The tract, which was already burdened with an easement for a sewer line crossing the northwest corner, was bounded on the north and west by land of other owners, and on the south and east by tidewater, affording access to the open sea through the river into Great Bay.

The easement which the defendant condemned in 1965 bordered the easterly and southerly perimeter of the plaintiffs' land, following the general contour of the entire shoreline for more than 800 feet, at an average distance of some twenty feet therefrom. A permanent easement twenty feet in width was taken, which was bordered on its inner side by a temporary construction easement thirty feet in width. The work of laying the sewer line proceeded in late September 1965, and ended in March 1966. A trench was excavated to an average depth of eleven feet, and ledge which was encountered over about half the length of the line necessitated blasting. Material excavated from the trench was deposited on the construction easement. Gravel to be used for the bed of the trench was stockpiled on the plaintiffs' land. A diesel-powered bulldozer and a backhoe used in the work were left in the yard from time to time. Cement mixers were used to construct three manholes on the permanent easement; and jackhammers were used to excavate ledge in the trench.

There was evidence that the premises were never restored to their original condition; that loam was not replaced; and that gravel and pieces of ledge rock were left exposed on the surface. Efficient operation of the plaintiffs' leaching field was interfered with, by the deposit of clay in a part of it, and a clearing thirty-feet wide was cut through the trees at the northeasterly end of the tract.

The plaintiffs' evidence was that the easement would prevent the construction of a suitable boathouse on the shore, and required the abandonment of plans for a guest house to be erected in a grove at the northeast corner of the tract. Their evidence tended to prove that the damages aggregated $7,000 to $8,000, including a diminution of rental value amounting to $1,200; while evidence

introduced by the defendant was that the value of the property was increased as much as 10%, or $4,500, by reason of installation of the sewer line.

The defendant excepted to the receipt in evidence of testimony by the plaintiff husband concerning conditions which prevailed during the progress of the work: the noise from blasting, jackhammers, cement mixers, and heavy equipment; the stockpiling of dirt; water in the ditch; and mud from thawing and freezing. It also excepted to exhibition to the jury of slides portraying the various portions of the land while the work progressed.

The damages suffered by the plaintiffs on account of the temporary easement condemned by the town were not measurable by the use of standards applicable to a permanent taking. See *Edgcomb Steel Co.* v. *State,* 100 N. H. 480, 486, 131 A. 2d 70. The recognized rule of damages where temporary easements are condemned calls for determination of the value of the use of which the owner is temporarily deprived by reason of the taking. 4 Nichols on Eminent Domain ( 3d *ed.* ) *ss.* 12.5, 14.24; Annot. 7 A. L. R. 2d, 1297. This is commonly measured by the diminution of the rental value of the property as a whole. Nichols, *supra, s.* 14.2462. See *Barker* v. *Company,* 78 N. H. 571, 103 A. 757; *Commonwealth* v. *Nantz,* ( Ky. ) 421 S. W. 2d 579; *Great A & P Tea Co.* v. *State,* 22 N. Y. 2d 75, 89, 238 N. E. 2d 705. In addition the owner is entitled to recover the cost of restoring the premises to their original condition. 4 Nichols, *supra, s.* 12.5. The instructions properly so advised the jury in this case.

The defendant does not dispute the principles by which the damages should be determined, and did not except to the instructions given. However, in support of its exception to receipt in evidence of the testimony previously described, and to the testimony of the plaintiffs' experts concerning the effect of conditions during construction upon the rental value of the premises, the defendant contends that the evidence was prejudicial and received in violation of the principle that an owner may not recover for inconvenience occasioned him by the taking. *Brewster* v. *State,* 107 N. H. 226, 219 A. 2d 706. This principle would not exclude evidence of conditions affecting the value of the use of the property to prospective lessees or purchasers. See *Stratton* v. *Jaffrey,* 102 N. H. 514, 517, 162 A. 2d 163. The evidence received was competent to show the damages occasioned by the temporary easement. See *Lentell* v. *Boston & Worcester St. Ry.,*

202 Mass. 115, 88 N. E. 765. It also furnished a basis for the expert testimony on damages. *Presbrey* v. *Old Colony & Newport Rwy. Co.*, 103 Mass. 1, 7.

The test to be employed by the jury, as the defendant argues, was an objective rather than subjective one. The jury was properly instructed: "People aren't compensated for any annoyance, inconvenience or frustration that they may experience as a result of the taking . . . [Their] compensation would be the extent to which this would affect the market value of the property when somebody else want[ed] to buy it . . . So the difficulties Mr. Paddock testified to during those months of construction are to be considered only in connection with the diminution of the . . . market value . . . the reduction in the fair rental value of the property during the construction period." The defendant's exceptions to the evidence received are overruled.

Other exceptions were taken by the defendant to the exclusion of evidence relating to negotiations preceding the taking, with respect to location of the easement, and such matters as the cost to the plaintiffs of connection to the sewer line. We see no error in the rulings of the Trial Court. For purposes of the assessment of damages, the location of the easement was fixed by the proceedings brought by the defendant town. No issue of necessity for the taking was before the Court. The damages were to be determined on the basis of the location taken, and preliminary offers or discussions not incorporated into the proceedings by way of reservations in favor of the plaintiffs were irrelevant to the issues presented.

The defendant also excepted to rulings made with respect to cross-examination of the plaintiff. After answers to preliminary questions on cross-examination were excluded, defendant's counsel sought leave "to reserve the right to cross-examine the witness at a later time." Following objection, the request was denied. The only reason advanced for defendant's request was that counsel desired "ample opportunity to frame questions that would be satisfactory to the court." The Trial Court considered that this would afford counsel a "disproportionate advantage." Counsel for the defendant then commented that he could call the plaintiff back "at the time of the presentation of our evidence." After discussion, the Court ruled: "If you want to cross-examine this man you can do it now. If you don't want to cross examine him you can waive. If you want to call him back as part of your

case in chief you can do that." It declined "to rule . . . in advance," whether the defendant would be permitted to cross-examine the plaintiff if the defendant "called him back as witness in our own presentation of evidence"; and thereupon counsel proceeded with cross-examination. The rulings of the Trial Court were not in violation of RSA 516:24, and in what transpired we find no error, or abuse of the Trial Court's discretion.

The defendant's exceptions to denial of certain of its requests for instructions have not been argued. No exception was taken to the instructions given, although in part inconsistent with the defendant's requests. The exceptions to the denial of the requests are taken to be waived.

*Judgment on the verdict.*

LAMPRON, J. was absent; the others concurred.